## OPINION

DECLARING THE SOLDIERS' VOTING BILL A VALID AND BINDING STATUTE OF THE STATE.

*To the Honorable Senate and House of Representatives:*

By the resolution of the two Houses of the Legislature, passed on the thirty-first day of August, 1864, and communicated to us by the President of the Senate and Speaker of the House on the 14th day of September instant, in connection with extracts from the journals and other evidence upon the subject, the opinion of the court is requested upon the question whether or not the soldiers' voting bill, passed by the legislature during the special session, in August last, has become a law without the approval of the governor.

The bill referred to, as we understand it, is the bill entitled "an act to enable the qualified voters of this State, engaged in the military service of the country, to vote for Electors of President and Vice President of the United States, and for Representatives in Congress."

So far as the journals of the two houses are concerned, it has been decided in the opinion of the judges, 35 N. H. Rep. 579, that they are to be treated as authentic records of the proceedings of the two houses, and are to be taken by us as conclusive proof of the facts there recorded as having taken place. But, of course, no opinion upon questions of fact, of either house or any committee or member thereof, expressed in any vote or resolution, and recorded in said journal, can be competent as evidence upon any subject.

In connection with said journals, there is presented also much other

evidence upon various points. But our impression is, that it was not contemplated by article 74 of our constitution, which authorizes each branch of the legislature, as well as the governor and council, to require the opinion of the justices of the supreme court upon important questions of law, and upon solemn occasions, that the judges should be called upon to settle questions of fact in any form. We shall not, therefore, undertake to decide any matter of fact, or weigh the evidence with any view of settling disputed questions, the decision of which depends upon evidence alone.

But the president of the senate and speaker of the house, in presenting the case to us, seem to assume that certain facts are established and proved, and they are assumed by them as the facts in the case. Now we propose, without giving any opinion in relation to the existence or non-existence of such facts, to take substantially what we understand to be assumed as the facts by your presiding officers—such at least as we deem most material—and upon those, as upon a "case stated," to give our opinion upon such questions of law as seem to be material.

We understand the most material of the facts, thus assumed to be established, to be the following : "That said bill originated in the house of representatives, passed both branches of the legislature, was duly engrossed, signed by the presiding officers of both branches, and about noon on Wednesday, August 17, 1864, was carried by the assistant clerk of the senate to the executive chamber, in the State House, in accordance with the customary mode of presenting bills to the governor, and was laid upon the table of the governor, who was then absent from the room, but who had been there during the morning, and was expected to return that afternoon, but did not ; that when said bill was thus laid upon the governor's table, some members of the executive council were present, and also Mr. Barrett, the State auditor, who was the son-in-law of the governor, and who had a table there in the executive chamber for the transaction of his business, near that of the governor ; that the assistant clerk of the senate, when he entered the executive chamber with said bill, announced that he had a bill for the governor ; that the governor saw said bill on Thursday, August 18th, when he came into the executive chamber, and found it upon his table there ; that both houses adjourned from Saturday, the 20th, to Tuesday, the 23d of August, and were not in session on Monday, August 22d ; that, on Wednesday, August 24th, in the afternoon, the governor sent a message to the house of representatives by Mr. Sinclair, a member of said house, who gave notice to the speaker, in the house, when in session, that he had a message from the governor to present ; that the speaker declined to receive it from him ; that said message was not received by any action of the speaker or of the house, and was not read in their hearing, but that, near the close of the session, that afternoon, while the yeas and nays were being taken on a motion to adjourn, which was decided in the affirmative, the secretary of State laid said message on the speaker's table, stating it to be a message from his excellency the governor ; that this message was not opened or read in the house, but was afterwards, on a subsequent day, referred to a select committee ; and that in this message

of the governor, he stated his objections to the bill in question, and returned said bill therewith to the house."

Upon this statement of facts thus presented to us, four questions of law may arise:

1. Whether what occurred on the afternoon of August 24th is to be regarded as a return of the bill to the house by the governor, with his objections, within the meaning of the constitution?

2. Is Monday, August 22d, to be counted as one of the five days specified in the constitution?

3. When was said bill presented to the governor?

4. How shall the five days specified be computed?

The provision of the constitution bearing upon these questions is as follows: ·

ARTICLE 44. "Every bill which shall have passed both houses of the general court, shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it; but if not, he shall return it, with his objections, to that house in which it shall have originated. * * * If any bill shall not be returned by the governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature, by their adjournment, prevent its return, in which case it shall not be a law."

I. Upon the first question raised, there can be no doubt. The act of the secretary of State, in laying said message upon the speaker's table and announcing it as a message from the governor, before the house finally adjourned, was a sufficient return of the bill. We are also of the opinion that the governor might send this message by any officer or member of the house, or other proper person, and if properly announced, as in this case it was, we see no reason why that would not be sufficient. If the governor returns the bill to the house in which it originated, and the house is properly notified that it is a message from the governor, neither the house nor the speaker can prevent its effect by refusing to receive it. The duty of the governor is performed when he returns the bill, with his objections, to the house in which the bill originated, and gives them proper notice, whether it is received or not.

Nor are we by any means prepared to say that the legislative day was ended, necessarily, by the adjournment of the house, even though it might have been at the usual hour in the afternoon; or that the return of the bill at any convenient time during the day to the speaker, although after the house adjourned for the day, would not have been sufficient.

The provision of the constitution in relation to this subject should receive a reasonable construction, and it can hardly be supposed that the time limited for the return of the bill has expired because that branch of the legislature in which the bill originated has adjourned for the day, if

the five days limited by the constitution have not expired.  The word "day," in its common acceptation, means a civil day, of twenty-four hours, beginning and ending at midnight.  *Shaw* v. *Dodge*, 5 N. H. Rep. 465; *Colby* v. *Knapp*, 13 N. H. Rep. 175.  The governor's veto message was therefore properly returned to the house of representatives, on Wednesday, August 24th.  Was that in season to prevent the bill from becoming a law?  This will depend upon the other questions to be considered.

II.  Is Monday, August 22d, when neither house was in session, to be counted as one of the five days specified?  Upon this point there can be no doubt.  The adjournment referred to in this provision of the constitution is not, we think, the ordinary recess or adjournment from time to time during the continuance of the session, but the final adjournment at the close of the session.  In fact, this is the only adjournment, we think, which could prevent a return of the bill within the time limited. If we are right in the views expressed upon the first point, viz : that it might be sufficient for the governor to return the bill, &c., to the speaker after the adjournment of the house for that day, if within the five days, then it follows, of course, that the house could not prevent the return of a bill by adjourning over any one of the five days, even though it should be the last one of the five, because the bill might in that case be returned, within the time limited, to the speaker, or to the clerk, or some other proper officer.  But when a final adjournment of the legislature for the session occurs before the expiration of the five days, then the bill cannot be returned, nor could the two houses act upon it if it could be then returned.  In the case before us, it is clear, we think, that the return was not prevented by the adjournment in question any more than it might have been by the adjournment from day to day.  The time for consideration, on the part of the governor, which was the great object of this provision, was not interfered with, but was all the more at his command and free from interruption and care on that account.

The constitution provides, in articles 19 and 36, against any adjournment of the house or senate during the session for more than two days at any one time.  It could not have been expected that any such adjournment would or could operate to defeat the return of any bill within the time there specified, that the governor might wish to veto.  Although, in the case before us, both houses adjourned for the same time, yet it often happens, and may at any time happen, that one house will adjourn for a day or two, while the other is in session.  Now a bill must be returned to the house in which it originated, and if it should be held that it must be returned to that house *while in session*, then an adjournment of *that house* over one day would prevent the return of the bill during that day as much as an adjournment of both houses ; and if it had been intended to provide against such an adjournment for a day, or two days at the longest, the constitutional provision should have been that the bill should be returned in five days to the house in which it originated, unless *that house* shall prevent it by an adjournment.  But no such provision was made.  The only adjournment that was to prevent the return of the bill, was an adjournment of *the legislature*; that

is, of "both houses of the general court," and not of either house alone. The language used would seem to be sufficiently indicative of the intention of the framers of the constitution in this matter.   Their opinion was, most evidently, that an adjournment of either house for a time not exceeding two days, whether the house adjourned for the same time or not, was not to prevent such return of any bill, but that it was only the final adjournment of the legislature, of both houses, for the session that could have had that effect.   We concur with them in that opinion. Monday, August 22d, is therefore to be reckoned as one of the five days specified.

III.    When was this bill presented to the governor?  If there can be no presentation of a bill to him until it is put into his own hand, then it was not presented until Thursday, August 18th.   But it would be absurd to hold that the officers of the senate and house of representatives are obliged, in order to perform their duty, to follow the governor wherever he may chance to go, whether in the State or out of it, upon his private business as well as public, and present bills to him *in person*, wherever he may happen to be.   Some States provide a dwelling-house, which is located at the capital and owned by the State, in which the governor, for the time being, is required by law to reside.   But in our State we have no executive mansion of that kind.   The governor here is not required to reside, or even to board, in Concord.   He might have neither residence, boarding-place, house, office, or stopping place at the capital, except at the State House ; or he may reside in Concord and spend all his time there.   He may have a store, office or other place of business.   He may be engaged in different kinds of business at several different places in Concord, or out of Concord, and have as many different offices for the transaction of such business.   Now, it is perfectly apparent, that, under these circumstances, in order that the business of legislation may be conducted with sufficient order and the necessary dispatch, there should be some place where it can be understood that communications can be made to the governor, and where it shall be his duty to attend, either in person or by some private secretary or agent, authorized to receive bills, papers and communications for him in his absence, at least during the sessions of the legislature ; and we know of no more appropriate place, during the sessions, for the presentation of bills and making other communications to the governor, than in the executive chamber, where it may be understood that such presentations may be made at reasonable hours, and where they will be received and attended to, and where it may be expected that the governor will attend, in person or otherwise, at such proper times, as to see that the public interests do not suffer, and that all the duties imposed upon him by his high office may be seasonably performed.

Still this is not *necessarily* the place where the governor receives communications from the two houses ; that must depend upon the usage. If it had been customary, both for the two houses to make these communications there, and for the governor to receive them there ; if they both understood that this was the proper place where such communications were to be made and received, then the assent of both would be

implied; and if such was the usage, and it was continued down to the time of the presentation of the bill in question, then it would be the duty of the governor to attend at such chamber and receive such communications, or to have some one there for that purpose, and the depositing of a bill there in the usual place by an officer of one of the houses, and calling the attention of the governor, secretary, or other person in charge of the room, to the fact, would, we think, be a good presentation, although, in consequence of the temporary absence of the governor for a few hours, or his attention being directed to other things, he may not have seen or known of such presentation on the day it was made.

This usage, though of long continuance, might probably be changed by the governor, and he might make, by special appointment, and a notice thereof to both houses, a private apartment in his own house, or at a hotel, or some other room in the State House, or in any other building, if within proper distance, and in other respects reasonably convenient, the place for receiving such communications, and then such apartment would be the proper place for making such presentations, and would so continue until otherwise ordered. But when he has thus changed the place and established a new one for this purpose, and such communications are habitually made there, his temporary absence for an hour, or for an afternoon, ought not to affect the presentation, and we think that in law it could not.

Cases might arise, where, by reason of sickness, the governor was obliged to be absent from the ordinary place of presentation altogether, or was unable from other causes to attend during the whole or a part of a session. What should be done in such cases, or what would constitute such a vacancy as would authorize the president of the senate to assume the governor's chair, we need not now inquire, as none of these questions are raised by the case before us.

But in case where by a settled usage, understood and assented to by all parties, the chamber of the governor and council was the place for making such communications, and so continued down to the time of the presentation in question, and the governor continued to attend there for that purpose, on the same day, and the day following, we think a presentation there would be sufficient, although, by reason of his temporary absence, or other cause, it failed to come into his hands, or to his knowledge even, until the day after such presentation.

Upon the facts thus presented to us in this case, we think the bill in question was presented to the governor, within the meaning of the constitution, on Wednesday, August 17th.

IV. Upon this view of the case, it might become unnecessary to consider the remaining question, as to the computation of time; because, if the bill was presented to the governor on Wednesday, August 17th, then the five days (besides Sunday) *within* which the bill must be returned, would expire with Tuesday, the 23d, by any mode of computation known to us. The bill was returned to the house on Wednesday, the 24th, with the veto message, and was, in any event, one day too late. We will, however, briefly allude to this fourth question. Is

the day on which the bill was presented to the governor to be included or excluded in computing the five days? Under the provisions ·of our present statute, there is no doubt that the day of presentation should be excluded; Revised Statutes, ch. 1, sec. 25. But this provision was introduced into our statutes at the revision in 1842, and prior to that there was no similar provision. But before this statute a very different rule of computation had prevailed in this State, and in other States and countries, which was probably the true rule when the Constitution was adopted. It was early settled to be the law of this State, that, in the computation of time from a *date*, or from the *day of a date*, the day of the date is to be excluded. But that where a computation is to be made from an *act done*, or from the *time of an act*, the day in which the act is done is to be included. *Leavitt* v. *Simes*, 3 N. H. 16; *Priest* v. *Tarlton*, 3 N. H. 93; *Rand* v. *Rand*, 4 N. H. 267; *Blake* v. *Crowninshield*, 9 N. H. 304. In the case before us, the time is to be computed from an *act done*, or the *time of an act*. The *act* is the presentation of the bill, and from that act the time is to be computed. Before the Revised Statutes, the day on which the act was done must have been *included* in computing the five days *within which* the bill must be returned.

Now, according to that computation, the bill was not returned in season, even though it had not been presented to the governor until Thursday, August 18th, because, including the day of presentation, we should have Thursday, Friday, Saturday, Monday, Tuesday, within which the bill must have been returned, but was not. If we were to adopt that computation, the bill would have become a law before it was returned, whether we hold the presentation to have been on Wednesday or Thursday.

There is no doubt that this construction would have been given to this provision of the constitution, prior to the Revised Statutes, and would now be given to it, but for the section alluded to, which was added at the revision and which, beyond, question, changed the rule of computation in cases like the present. This statute provision may properly operate, and must operate, in the construction of other statutes; but the question arises, how far can it affect the constitution? The constitution was *before* this statute, and was and is *above* it, and paramount to it in authority, and cannot certainly be changed in its letter or form by the provisions of any statute. How far its construction can or should be affected by any change in the statute; whether, by the enacting of any statute, the constitution can be made to mean what it did not mean before, in a case like this, is a question which we need not now determine, as it is not necessary in order to decide the case before us.

We, therefore, without undertaking to pass upon, or to give any opinion concerning, any question of fact raised by the evidence, but endeavoring to ascertain and decide such questions of law as we suppose to be material, and which were suggested by the communication made to us, certify our opinion to the Honorable Senate and House of Representatives, that, upon the facts assumed to have been established in the communication made to us, and thus presented to us by your direction and

in your behalf, the bill entitled "An act to enable the qualified voters of this State engaged in the military service of the country, to vote for Electors of President and Vice President of the United States and for Representatives in Congress," having passed both houses of the general court, and been presented to the governor, and not having been returned by the governor, with his objections, to the house in which it originated, within five days (Sunday excepted) after it was presented to him, and such return of said bill, within said five days, not having been prevented by the legislature by their adjournment, has become a law in like manner as if the governor had signed it, and that the same is now a valid and binding statute of this State.

September 23d, 1864.

                                J. E. SARGENT,
                                HENRY A. BELLOWS,
                                GEO. W. NESMITH.

The undersigned Justices of the Supreme Judicial Court wish to have it understood that they do not regard it as any part of their official duty in a case like this, to find from evidence submitted to them the facts which are to be the foundation of their opinion. But, upon the facts assumed in the foregoing opinion, they agree in the conclusion that the act in question has become a valid law.

                                IRA PERLEY,
                                WILLIAM H. BARTLETT.

My opinion is that said bill has become and is a law.

                                CHARLES DOE.