HEARD OCTOBER TERM, 1875.

## CORWIN *vs.* COMPTROLLER GENERAL.

A Bill, which originated in the House, was presented to the Governor on Thursday, March 11, and on the same day the House adjourned to Monday, March 15, when the Speaker took the chair, but, no quorum being present, it adjourned to Tuesday, March 16. On Wednesday, March 17, the Governor returned the Bill to the House with his objections: *Held*, that the Governor had not returned the Bill within three days, the time fixed by Section 22, Article III, of the Constitution, and, therefore, it had become law.

The word adjournment, as used in Section 22, Article III, of the Constitution, means an adjournment by the concurrent action of both Houses of the General Assembly.

The three days, Sundays excepted, within which by the same Article the Governor is to return a Bill, are to be computed by excluding the day on which it was presented to him.

It is competent for a House which is in session without a quorum to receive a Bill returned to it with the Governor's objections, though it may not be able to act upon it on that day.

The "Act to provide for the settlement and redemption of certain claims against the State," 15 Stat., 997, neither violates Section 10, Article I, of the Constitution of the United States, nor is it prohibited by the Constitution of the State as contemplating a mode of raising money outside of the powers conferred by that instrument for the purpose.

This was a petition to the Supreme Court, entitled "The State of South Carolina, ex relatione Henry C. Corwin, *against* Thomas C. Dunn, Comptroller General of the State of South Carolina," praying for a writ of *mandamus* to issue to the petitioner four warrants pursuant to the provisions of the Act of March, 1875, "to provide for the settlement and redemption of certain claims against the State," in payment of a certain pay certificate owned by the petitioner which had been audited and allowed by the Commission on Claims sitting under the authority of said Act.

A rule to show cause was issued, and the Comptroller General made return thereto and showed cause as follows :

"1. That the so-called Act of the General Assembly referred to in the second paragraph of the petition herein, entitled 'An Act to provide for the settlement and redemption of certain claims against the State,' and which it is alleged in said petition became a law under the Constitution and laws of this State in the month of March, A. D. 1875, is not a law of this State, because the said so-called Act of the General Assembly has not been passed and enacted in the manner required by the Constitution of this State, in this that the said so-called Act was returned by the Governor of this State to the House of Representatives, the house in which it originated, without his approval and with a statement of his objections thereto, within the time prescribed in Section 22 of Article III of the Constitution of said State, and that the so-called Act was not thereafter reconsidered by the said House of Representatives and passed by two-thirds of said House of Representatives nor by two-thirds of the Senate, the other house of the General Assembly.

"Wherefore, this respondent shews for cause that the said so-called Act of the General Assembly is wholly inoperative and void and gives no authority of law to this respondent, and imposes no

duty on this respondent to do the acts demanded of him by the relator in this cause.

"2. And for a second cause why said writ of *mandamus* should not issue to this respondent, as prayed for in the petition herein, this respondent shews: That the said so-called Act of the General Assembly, which it is alleged in said petition became a law in.the month of March, A. D. 1875, is unconstitutional and void because it is in conflict with and is forbidden by·Section 10 of Article I of the Constitution of the United States, which, among other things, declares that 'no State shall pass any law impairing the obligation of contracts,' in this that the said so-called Act of the General Assembly impairs the obligation of the contract made and entered into by the State of South Carolina by the Joint Resolution of the General Assembly, approved January 29, 1873, whereby it was made a part of the Constitution of said State that the General Assembly should not thereafter create any further debt or obligation, either by the loan of the credit of the State, by guaranty, endorsement or otherwise, except for the ordinary and current business of the State, without first submitting the question of the creation of such debt to the people of the State at a general election, and unless two-thirds of the qualified voters of the State, voting on the question, shall be in favor of the creation of such debt.

"That, relying on the contract embodied in said Joint Resolution amending the Constitution of said State, many persons have since purchased the public securities and evidences of indebtedness issued under the Act of the General Assembly of said State, approved December 22, 1873, entitled 'An Act to reduce the volume of the public debt and to provide for the payment of the same;' that the said so-called Act of the General Assembly, under the authority of which the relator herein now asks for a writ of *mandamus* to this respondent, violates the contract expressed in said Joint Resolution amending the Constitution of the State and impairs the obligation thereof by authorizing the creation of a debt of said State contrary to the provisions and requirements of said Joint Resolution and the amendment to the Constitution therein contained, and without the consent of those persons who hold and own the public securities and evidences of indebtedness of this State issued by the State and purchased by the owners thereof under the contract herein set forth.

" Wherefore, this respondent shews for cause that the said so-called Act of the General Assembly which it is alleged in said petition became a law in the month of March, A. D. 1875, is unconstitutional and void and gives no authority of law to this respondent, and imposes no duty on this · respondent to do the acts demanded of him by the relator in this cause."

*Bachman & Youmans,* for relator.

*Melton,* Attorney General, contra.

The opinion of the Court was delivered by

MOSES, C. J. The return of the respondent to the rule requiring him to show cause why the writ of *mandamus* should not issue contests the validity of the Act under which the relator seeks to enforce his alleged right: First, because it was not passed in conformity with the mode prescribed by the Constitution; and, second, if not obnoxious to the said objection, it is void because in conflict with the tenth Section of the first Article of the Constitution of the United States. The question arising under the first exception involves the rights and powers of the Executive in regard to the legislation of the General Assembly, which can only be effective when in the form of a Bill or Joint Resolution, either by the approval of the Governor or his failure to return it, with his objections, to the house in which it originated within the time fixed by the Constitution, or its passage over his veto by a two-thirds vote of both branches.

The Bill in question was not signed by the Governor; but it is contended that it has acquired the constitutional force of an Act because he failed to return it to the House of Representatives (that being the body in which it originated) within the period limited by the Constitution.

The facts are as follows :

The Bill was duly passed by both houses and presented to the Governor Thursday, March 11, 1875, at 11:30 A. M. The House adjourned on that day to 7 o'clock P. M. of Monday, March 15, when the Speaker took the chair. The roll was called by the Clerk, but, a quorum not answering, at 7.30 P. M. it adjourned till Tuesday, the 16th, on which day it was in session. The Senate adjourned on Friday, March 12th, to Tuesday, March 16th, and

was in session March 11th, 12th and 16th. The Bill was returned by the Governor to the House on Wednesday, March 17, with a message, expressing his objections, dated on the same day.

The twenty-second Section of the third Article of the Constitution provides as follows:

" If a Bill or Joint Resolution shall not be returned by the Governor within three days after it shall have been presented to him, (Sundays excepted,) it shall have the same force and effect as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall not have such force and effect unless returned within three days after their next meeting."

It is admitted that the Bill was not returned within three days after its presentation to the Governor, but it is claimed that the General Assembly, " by their adjournment," prevented its return within the time prescribed, and that the veto was sent to the House " within two days after their next meeting."

It becomes, therefore, necessary to inquire what, in the view of the Constitution, is an adjournment of the General Assembly.

Section 1 of Article II vests " the legislative power of the State in two distinct branches, one to be styled the ' Senate,' and the other the ' House of Representatives,' and both together the ' General Assembly of the State of South Carolina.' " The separate and independent action of each house to the same end, if not in conformity with the forms required by the Constitution, would fail to impress it with the sanction of law. Certain separate powers, too, are confided to the House and Senate. These they exercise by virtue of the exclusive authority granted to each by the Constitution. But action so permitted and recognized as valid for the proposed purpose is not the action of the General Assembly. A component part cannot assume a right which, in the language of the grant conferring the power, can only be enforced by the concurrent will of the several parts constituting the whole.

The General Assembly, under the Constitution, must have at least one session annually. By Section 12 of Article II it " *shall* be convened on the fourth Tuesday in November annually;" and the election for Senators and Representatives, by Section 11 of same Article, "shall be held on the 14th, 15th and 16th days of April, in the year 1868, and the second on third Wednesday in October, 1870, and forever thereafter on the same day in every second year." [Changed, by amendment of Constitution, to " first

Tuesday following the first Monday in November in every second year."]

The first session terminates on a day fixed by the concurrence of the two branches; the other must close before the second Monday after the next general election, because, by the thirteenth Section of the second Article, the "*terms*" of the Senators and Representatives then elected begin. The General Assembly is to convene on the day named in the Constitution; but, by the twenty-fifth Section of the same Article, "neither house, during the session of the General Assembly, shall, without the consent of the other, adjourn for more than three days." It would thus seem that there could be no final close of a session of the General Assembly, where it does not expire by constitutional limitation, except by the concurrent action of both houses. The General Assembly cannot be said to have adjourned because each house has exercised its separate right to adjourn for three days. As well might it be said that the daily closing of the sitting of each house is an adjournment of the General Assembly. Not a single clause of the Constitution can be brought into requisition to aid the conclusion pressed on the Court by the argument for the respondent, while several may be cited to show that when the Constitution speaks of the adjournment of the General Assembly it refers to a final close of the session, which, as Mr. Cushing says, in his Law and Practice of Legislative Assemblies, 200, "is the period of time during which both the branches of the Legislature sit from day to day, with occasional intermissions of a day or two at a time, by one or both, until the business before them is completed and the daily sittings are brought to a close." Thus Section 17 of Article II: "The members of both houses shall be protected in their persons and estates during their attendance on, going to and returning from the General Assembly, and ten days previous to the sitting and ten days after the adjournment thereof." So, too, the sixteenth Section of the third Article: "The Governor, in case of disagreement between the two houses in respect to the time of adjournment, may adjourn them to such time as he shall think proper, not beyond the time of the annual session next ensuing."

In this State, the body in which the legislative power is vested is termed in the Constitution "The General Assembly;" in New York, Maine and some other of the States, "The Legislature." Whether called by the one name or the other, it is usually composed of a

Senate and House of Representatives. The clauses of their Constitutions conferring the veto power on the Governor provide for a prevention of its exercise by the "adjournment of the Legislature" within the time allowed for the return of the Bill to the house in which it originated. If, in our Constitution, the word Legislature had been used in the place of General Assembly, could there have been a doubt that the adjournment had reference not to the adjournment of either house by its own action, but to that of the two houses by the separate but concurring vote of both? In its political acceptation, the phrase General Assembly has the same significance as Legislature, and must be understood in the same sense.

The views which we have expressed in regard to the interpretation of the clause of the Constitution now in question are strengthened and confirmed by the concurrent reply of all the Justices of the Supreme Court of New Hampshire to an inquiry submitted by the Legislature of that State in conformity with a provision of its Constitution declaring "the soldiers' voting Bill a valid and binding statute of the State."

The facts are not unlike those in regard to the Act before us, and two of the questions made are identical with those presented for our decision. The Bill, which originated in the House, was duly passed and engrossed, and about noon on Wednesday, August 17th, left by the Clerk of the Senate in the Executive Chamber. Both Houses adjourned from Saturday, 20th, to Tuesday, 23d August, and were not in session on Monday, August 22d. On Wednesday, August 24th, the Governor sent a message to the House, which was laid on the Speaker's desk, the Secretary of State, who bore it, stating it to be a message from His Excellency the Governor. The House was then engaged in taking the yeas and nays on a motion to adjourn, which was carried in the affirmative. On a subsequent day, it was referred to a committee and by them found to contain his veto. By the Constitution of New Hampshire, "if any Bill shall not be returned by the Governor within five days after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Legislature, by their adjournment, prevents its return, in which case it shall not be a law." One of the questions submitted was, whether Monday, August 22d, was to be counted as one of the five days specified in the Constitution, and the Justices, by their unanimous opinion, answered in the affirma-

tive.—45 N. H., 607. The argument of the Court is so direct and conclusive that we will be excused from quoting a large portion of it. The Court says, at page 640:

"Is Monday, August 22d, when neither house was in session, to be counted as one of the five days specified? Upon this point there can be no doubt. The adjournment referred to in this provision of the Constitution is not, we think, the ordinary recess or adjournment from time to time during the continuance of the session, but the final adjournment at the close of the session. In fact, this is the only adjournment, we think, which could prevent a return of the Bill within the time limited. If we are right upon the views expressed upon the first point, viz., that it might be sufficient for the Governor to return the Bill, &c., to the Speaker after the adjournment for that day, if within the five days, then it follows, of course, that the House could not prevent the return of a Bill by adjourning over any one of the five days, even though it should be the last one of the five, because the Bill might, in that case, be returned within the time limited to the Speaker or to the Clerk, or some other proper officer. But when a final adjournment of the Legislature for the session occurs before the expiration of the five days, then the Bill cannot be returned, nor could the two houses act upon it if it could be then returned. In the case before us, it is clear, we think, that the return was not prevented by the adjournment in question any more than it might have been by the adjournment from day to day. The time for consideration on the part of the Governor, which was the great object of this provision, was not interfered with, but was all the more at his command and free from interruption and care on that account. The Constitution provides, in Articles XIX and XXXVI, against any adjournment of the House and Senate during the session for more than two days at any one time. It could not have been expected that any such adjournment would or could operate to defeat the return of any Bill within the time there specified that the Governor might wish to veto. Although, in the case before us, both houses adjourned for the same time, yet it often happens, and may at any time happen, that one house will adjourn for a day or two while the other is in session. Now, a Bill must be returned to the house in which it originated; and if it should be held that it must be returned to that house *while in session*, then an adjournment of *that house* over one day would prevent the return of the Bill during that day as

much as an adjournment of both houses; and if it had been intended to provide against such an adjournment for a day, or two at the longest, the constitutional provision should have been that the Bill should be returned in five days to the House in which it originated unless *that house* shall prevent it by an adjournment. But no such provision was made. The only adjournment that was to prevent the return of the Bill was an adjournment of the *Legislature;* that is, of 'both houses of the General Assembly,' and not of either house alone. The language used would seem to be sufficiently indicative of the intention of the framers of the Constitution. Their opinion was, most evidently, that an adjournment of either house for a term not exceeding two days, whether the other house adjourned for the same time or not, was not to prevent such return of any Bill, but that it was only the final adjournment of the Legislature of both houses for the session that could have had that effect. We concur with them in that opinion. Monday, August 22d, is, therefore, to be reckoned as one of the five days specified."

The opinion commends itself, not only by reason of the learning and character of the Court from which it emanated, but by the impressive argument through which it is enforced. If, therefore, as in the case before us, the return of the Bill by the Governor in three days, Sundays excepted, was not prevented by the adjournment of the General Assembly, it must have the same force and effect as if he had signed it, no matter what other cause prevented it.

In our judgment, too, the Bill might have been returned to the Speaker or Clerk on any day of the three days after it was presented to the Governor, (Sunday excepted); and the House not being in session on Friday or Saturday, and, assuming, for the argument, that it was not in session on Monday, did not prevent his compliance with the constitutional requisition. From the commencement to the close of a session, the Speaker and the Clerk may, by fair inference, be supposed to be present at the seat of government, although the House may have adjourned for three days. Certainly the Clerk has a known office where the papers committed to his keeping, both during the sitting and vacation of the House, are kept, and where persons having official business may confer with him. If the Governor cannot return a Bill except when the House is sitting, that body can prevent the exercise of the veto power by adjourning on the third day, as soon as it meets, and thus prevent the Governor having the benefit of the three days allowed him by

the Constitution. To the same conclusion came the Justices of· the Supreme Court of New Hampshire, in the matter already referred to, as is thus expressed on page 609 : "Nor are we by any means prepared to say that the legislative day was ended, necessarily, by the adjournment of the House, even though it might have been at the usual hour in the afternoon; or that the return of the Bill at any convenient time during the day to the Speaker, although after the House had adjourned for the day, would not have been suffi-cient.

"The provision of the Constitution in relation to this subject should receive a reasonable construction, and it can hardly be sup-posed that the time limited for the return of the Bill has expired because that branch of the Legislature in which the Bill originated had adjourned for the day, if the five days limited by the Constitu-tion have not expired. The word 'day,' in its common acceptation, means a civil day of twenty-four hours, beginning and ending at midnight."

But what was to prevent the reception of the veto message if the Governor had caused it to be delivered to the Speaker on the evening of Monday, August 15th, to which time the House had ad-journed, and of which fact he had notice through the journal, with which he is daily furnished? His message bore date the 17th. How was he to know, in advance, that there would then be no quo-rum, and what official information did he have that on the said evening, when the Speaker had called the House to order, the Clerk and the other officers in their places in the Representative cham-ber, there was no quorum present?

If the message had been presented on that evening to the Speaker when in the chair, might not the business to which it related have been considered of such public importance as to demand the attend-ance of a quorum? and if a sufficient number could not be found to form one, and the members present had adjourned to the next day, and a quorum then attended, could the reading of the message have been refused and the constitutional right of the Governor de-feated, when within the three days he had delivered his message to the Speaker, he in the chair and presiding in the Representative chamber over the members present?

The view which we take of the first point raised by the return might render it necessary to consider whether, in the computation of time allowed to the Governor, the day on which the Bill is to be

submitted to him is to be included. Such a construction must actually deprive the Governor of the full three days intended by the Constitution for the examination of the Bill or resolution presented to him.

Without citing the various cases which have induced the Courts to change the rule including the day of an act done, or an event happening, it may be enough to say, in the language of Mr. Justice Field, in delivering the opinion of the Supreme Court in *Sheets* vs. *Selden,* 2 Wallace, 190: " The general current of modern authorities on the interpretation of contracts, and also of statutes, where time is to be computed from a particular day or a particular event, where an act is to be performed within a specified period *from* or *after* a day named, is to exclude the day thus designated and to include the last day of the specified period." The illustration of Chief Justice Kenyon in *Ex parte Fallon and wife* (5 T. R., 287,) shows that any other rule would defeat the intention and diminish the time allowed for the performance of the act. He says: "Suppose the direction of the Act had been to enroll the memorial within *one* day after the granting of the annuity. Could it be pretended that that meant the same as if it were said that it should be done on the *same* day on which the act was done? If not, neither can it be construed inclusively where a greater number of days is allowed." So here, if the first day is to be included, the Senate or the House charged with the presentation of the Bill to the Governor might, in fact, restrict him to two days by not causing it to be delivered to him until the hour of midnight.

The objection made by the return that " the Act to provide for the settlement and redemption of certain claims against the State," (15 Stat., 997,) referred to in the petition of the relator, is unconstitutional, because in violation of Section 10 of Article I of the Constitution of the United States, together with the further one made on the argument, that it is repugnant to the Constitution of the State as contemplating a mode of raising money outside of the powers conferred by that instrument for the purpose, cannot be maintained. In regard to the last, it is only necessary to refer to the conclusions of this Court, so well and ably pronounced and enforced by Mr. Justice Willard in the opinion in *State* vs. *Hayne,* (4 S. C., 403,) to show that the tax proposed to be raised by the Act is not in violation of the taxing power vested by the Constitution in the Legislature.

We have failed, too, to perceive how the Act violates Section 10 of Article I of the Constitution of the United States, which declares that "no State shall pass any law impairing the obligation of contracts." The pay certificate through which the relator claims that he is entitled to the provisions of the Act, by the very language of the Act, is recognized as a "liquidated debt of the State," and the same term is applied to the other claims to be audited by the "Commission" appointed by its first Section. It directs a tax for the payment of debts "fixed in amount and ordered to be paid" by the prior action of the Legislature, and interferes with no tax already provided for the payment of other claims against the State. It leaves unaffected and undisturbed the levy directed and appropriated for the satisfaction of the bonds and other obligations of the State; and in no single particular does it attempt to interfere with their binding efficacy, or withdraw from their payment any previous provision, but leaves them in full force, with all the guaranties pledged for their security.

Nor has the proposition any better foundation when it seeks to enforce the unconstitutionality of the Act as impairing the contract made with the bondholders of the State, under the Act of December 22, 1873, (15 Stat., 518,) "to reduce the volume of the public debt and provide for the payment of the same," and for this purpose draws into requisition Article XVI of the Constitution, which forbids the creation of any further debt or obligation, either by the loan of the credit of the State by guaranty, endorsement or otherwise, except for the ordinary and current business of the State, without first submitting the question as to the creation, &c., to the people at a general State election, &c. It is enough to say that the Act of 1875 creates on the part of the State "no further debt or obligation," and in no way increases "the public debt of South Carolina," which it was the purpose of the said Article to prevent, unless all the formalities it prescribes are first observed.

In the judgment of the Court, the writ prayed for must issue, and it is so ordered.

WILLARD, A. J. I concur in the results to which the opinion of the Chief Justice arrives, and in its reasonings, so far as, in my judgment, they are applicable to what is necessary to a decision in this case. That is to say, I concur in the conclusion that the three days within which the Governor is to return a Bill with his objec-

tions is to be computed by excluding the day in which the Bill is transmitted to him. Under the case before us, the last day for returning the Bill was Monday, March 15. On that day the House of Representatives, the proper body to which the Bill should be returned, was in session, but without a quorum, as it appears. I am of opinion that the House of Representatives was competent to receive the Bill, with the Governor's objections, on · that day, although not able to act upon it by *reason of the want of a* quorum. I regard this conclusion as inevitably resulting from the reasonings of the opinion of the Chief Justice. As it regards the competency of the Speaker or the Clerk to receive such a communication while the House is not in session, I deem it unnecessary to express any opinion, as no such contingency is involved in the facts of the case.

*Wright*, A. J., concurs with *Willard*, A. J.