The Honorable Shane Broadway Speaker of the House 83rd General Assembly Room 350, Third Floor, State Capitol Little Rock, Arkansas 72201-1089
The Honorable Mike Beebe President Pro Tempore 83rd General Assembly State Capitol Little Rock, Arkansas 72201-1089
Gentlemen:
I am writing in response to your joint request for an opinion on the effective date of Senate Bill 595, which amends several provisions in Title 6, Chapter 82, subchapter ten of the Arkansas Code governing the "Arkansas Academic Challenge Scholarship Program." You note that Senate Bill 595 was "delivered to the Governor on April 12, 2001, and having not been returned by him within five (5) days, Sundays excepted should have become law on April 19, 2001." You reference art. 6, § 15 of the Arkansas Constitution, which provides as follows:
 Every bill which shall have passed both houses of the General Assembly shall be presented to the Governor; if he approves it, he shall sign it; but if he shall not approve it, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon their journal and proceed to reconsider it. If, after such reconsideration, a majority of the whole number elected to that house shall agree to pass the bill, it shall be sent with the objections to the other house, by which likewise it shall be reconsidered; and, if approved by a majority of the whole number elected to that house, it shall be a law; but in such cases the vote of both houses shall be determined by "yeas and nays," and the names of the members voting for or against the bill shall be entered on the journals. If any bill shall not be returned by the Governor within five days, Sunday excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after such adjournment.
Arkansas Constitution, art. 6, § 15 (emphasis added).
You note that "[c]urrently, the General Assembly is in recess, and has not adjourned. (See Senate Concurrent Resolution 28. . . .") Senate Concurrent Resolution 28 extends the Eighty-Third General Assembly until May 14, 2001 and provides that the General Assembly shall enter into recess at the close of business on April 13, 2001. SCR 28, §§ 1 and 2. The President Pro Tempore and the Speaker may, by joint proclamation, "[r]econvene the General Assembly at any time before 12:00 Noon, May 14, 2001 for the purpose of [among other things] considering vetoes. . . ." SCR 28 § 3 (A)(i). If not reconvened or adjourned before 12:00 noon, May 14, 2001, the regular session of the Eighty-Third General Assembly is adjourned sine die on that date. Id. at Section 4.
You note that "[I]t is clear from the SCR 28 that the Eighty-Third General Assembly has not adjourned, but instead recessed. . . . During this legislative recess, the session support staff is still in place in order to process any bill that is returned from the Governor. The General Assembly is still vested with its full legislative power and can override any veto that it sent to it. . . ."
I must note from the outset in responding to your question that the bill at issue, Senate Bill 595, contains an emergency clause, which states that:
 It is found and determined by the General Assembly that the state does not have the funds to support the Academic Challenge Program in its current form and that applicants graduating after December 31, 2000, will experience uncertainty regarding eligibility for the Academic Challenge Scholarship, and many applicants may be delayed in beginning their post-secondary education unless changes in the scholarship program become effective in sufficient time to allow scholarship awards to be made to those students making enrollment decisions for the 2001-2002 academic year. Therefore, an emergency is declared to exist and this act being immediately necessary for the preservation of the public peace, health and safety shall become effective on April 30, 2001.
Senate Bill 595, § 5 (emphasis added).
Your question as to the effective date of Senate Bill 595 thus turns upon the meaning of the word "adjournment" in article 6, § 15 above and what it means for the General Assembly to "by their adjournment, prevent [a bill's] return" to the Governor. If the General Assembly has not currently "adjourned" within the meaning of this provision, Senate Bill 595 became a law, as you note, on April 19th, having remained with the Governor for five days[1] without his signature.[2] If the General Assembly has "adjourned" for purposes of this provision and thus "prevented" the return of the bill, the Governor has twenty days after the adjournment to file the bill with the Secretary of State with his objections. Under this interpretation, if he did not sign the bill or file it with the Secretary of State with his objections within the twenty-day period, the bill became law at the expiration of that period, which by my calculation would be May 4th, the twenty-first day after the alleged "adjournment" and four days after the date set in the emergency clause.
RESPONSE
There is no reported Arkansas case on the precise question you have posed. A number of other state jurisdictions have addressed the issue, however, and the "prevailing" or "majority" view appears to be that "adjournment," as used in provisions similar to art. 6, § 15, means final adjournment, and a temporary recess of the General Assembly does not prevent the return of a bill by the Governor to the authorized agents of the originating house. Although the issue is one of first impression in Arkansas, my best legal judgment is that the Arkansas Supreme Court, if faced with the question, would align itself with the prevailing or majority view. As a consequence, it is my opinion that Senate Bill 595, having remained with the Governor for the requisite five days without his signature, became law on April 19th and became effective, according to the emergency clause on April 30th.
As noted above, there is no reported decision in Arkansas on the question posed.[3] You reference in your request, however, a previously issued Attorney General opinion on the question. See Op. Att'y. Gen. 79-122. That opinion, issued by one of my predecessors, involved the effective date of Senate Bill 167 of the 1979 regular session. The bill was presented to the Governor on April 20th, 1979, the same day the General Assembly began an extended recess for twenty months, until January 1981, essentially until the beginning of the next regular session. The Governor signed the bill on May 18, 1979, and the question of its effective date was presented. The Opinion concludes that: "Since the General Assembly began an extended recess on April 20, 1979, their action prevented the Governor from returning the bill to them within the five (5) days set forth in the first part of the above quoted constitutional article. Therefore, the Governor had a period of twenty (20) days within which to either sign or veto the bill before it would become a law by the passage of time. . . . From the foregoing it is our opinion that the bill became law on the 11th day of May, 1979, which is the day after the twenty (20) day period expired." Id. at 1.
You distinguish the conclusion reached in Op. Att'y. Gen. 79-122 by stating that: "[a]lthough Attorney General Opinion No. 77-122 [sic] may seem to be controlling on its face; the facts presented there are different from this case. At the time that opinion was prepared, the General Assembly had `indefinitely recessed' until the start of the next biennium. (See Wells v. Riviere, 269 Ark. 156, 599 S.W.2d 375
(1980))."[4] You also state that "unlike the `extended recess' of 1979, there is nothing in SCR 28 that would prevent the return of the General Assembly thereby triggering the 20-day requirement of Article 6, § 15
of the Constitution of the State of Arkansas."
Opinion No. 79-122 may well be factually dissimilar to the question you present. The prolonged recess of the Seventy-Second General Assembly was eventually determined to be unconstitutional, a conclusion resulting in invalidation of at least some action of that body. Wells, supra. My primary disagreement with Opinion 79-122 does not stem, however, from its factual dissimilarity from the situation at hand, but rather from the fact that the Opinion itself is frankly short on analysis and devoid of any citation of authority. Although the question is one of first impression in Arkansas, the Arkansas Supreme Court has stated that it is appropriate to look to the decisions of sister states when presented with novel questions. Williams v. State, 338 Ark. 97, 991 S.W.2d 565 (1999);Rockefeller v. Rockefeller, 335 Ark. 145, 980 S.W.2d 255 (1998); Stephensv. State, 320 Ark. 426, 898 S.W.2d 435 (1995); W.M. Bashlin Co. v.Smith, 277 Ark. 406, 643 S.W.2d 526 (1982); Williamson v. Williamson,212 Ark. 12, 204 S.W.2d 785 (1947); and Birchett v. Tuf-Nut GarmentManufacturing Company, 205 Ark. 483, 169 S.W.2d 574 (1943).
A number of other jurisdictions have addressed the meaning of the term "adjournment" and the question of when the "return" of a bill is prevented under similar constitutional provisions. A majority of the jurisdictions addressing the question have held that the word "adjournment" means final adjournment and a temporary recess of the legislature does not prevent the return of a bill by the governor. SeeState ex rel. Gilmore v. Brown, 6 Ohio St.3d 39, 451 N.E.2d 235 (1983) (word "adjournment" within meaning of constitutional provision requiring the Governor, in case adjournment by General Assembly prevents return of a vetoed bill, to file bill in office of Secretary of State means adjournment sine die and not a weekend adjournment); Redmond v. Ray,268 N.W.2d 849 (Iowa 1978) (an intra-session three to four-week legislative adjournment during which an agent is designated to receive messages from the Governor is not an adjournment which prevents return of disapproved bills and hence does not trigger pocket veto provision); In reInterrogatories of the Colorado Senate of the Fifty-First GeneralAssembly, 195 Colo. 220, 578 P.2d 216 (1978) (vetoed bills were returnable to the General Assembly during recess at which time the chief clerk of the House, the Secretary of the Senate and, from time to time, the Speaker of the House, the majority leader of the House and the majority leader of the Senate were in attendance in the respective chambers); Hoppe v. Northern States Power Company, 298 Minn. 386,215 N.W.2d 797 (1974) (adjournments short of final adjournment will not prevent the return of legislative bills by the governor and during temporary and interim adjournments, the governor is free to return the bills, with his objections, to any member or officer of the proper house of the legislature); Hawaiian Airlines, Limited v. Public UtilitiesCommission of the Territory of Hawaii, 43 Haw. 216, 1959 WL 11641 (1959) (constitutional phrase "unless the legislature by their adjournment prevent its return" refers to sine die adjournment); State ex rel.Sullivan v. Dammann, 221 Wis. 551, 267 N.W. 433 (1936) (adjournment in constitutional provision concerning return of bills by the Governor means "sine die" adjournment and temporary adjournment for more than three days did not prevent bill from becoming law where Governor failed to return it in relevant time period); Wood v. State Administrative Board,225 Mich. 220, 238 N.W. 16 (1931) (only adjournment "without a day" prevents the return of a bill by the governor); State ex rel. Putnam v. Holt,172 Minn. 162, 215 N.W.200 (1927) (bill vetoed by the governor need not be returned to the house of origin while in session, but may be returned to presiding officer, secretary, clerk, or member); State ex rel. Thompsonv. Dixie Finance Co., 152 Tenn. 306, 278 S.W. 59 (1925) (bill need not be returned by governor to General Assembly while in session, but may be returned to a clerk or some member of the committee on enrolled bills);Johnson City v. Tennessee Eastern Electric Co., 133 Tenn. 632,182 S.W. 587 (1916) (adjournment means final adjournment and governor cannot veto bill by returning it after 33-day temporary adjournment); State ex rel.State Pharmaceutical Ass'n v. Michel, 52 La.Ann. 936, 27 So. 565 (1900) (adjournment means final adjournment and governor can properly return a bill during relevant period to agents of the originating house);Hequembourg v. City of Dunkirk, 2 N.Y.S. 447 (1888) (temporary ten-day adjournment of legislature did not prevent the return of bill by the governor and it became a law); Miller v. Hurford, 11 Neb. 377, 9 N.W. 477
(1881) (adjournment means adjournment sine die and not period during which legislature adjourned from the 29th of March to the 30th of May); Corwin v. Comptroller General, 6 S.C. 390, 1875 WL 5392 (S.C. 1875) (bill might have been returned by governor to agents of the house while temporarily adjourned and such an adjournment does not prevent compliance with the constitutional requisition); Harpending v. Haight, 39 Cal. 189,1870 WL 857 (1870) (governor could have returned a bill during the constitutional period to an agent of the Senate while not in actual session because it still has an organized existence as a legislative body); and Opinion of the Justices, 45 N.H. 607, 1864 WL 1586 (N.H. 1864) (final adjournment is the only adjournment that can prevent the return of a bill). See also Sutherland, Statutory Construction, §§ 16.03 and 16.04 (5th ed. 1994) (term "adjournment' as used in these constitutional provisions is generally held to relate to final adjournment rather than temporary adjournment or recess; return of a bill after a temporary recess does not prevent the bill from becoming law and during temporary adjournment a bill may be returned to an officer or member of the house); 64 A.L.R. 1446 and 82 C.J.S. Statutes § 46 (b).
A minority of jurisdictions have decided the issue to the contrary. SeeOpinion of the Justices, 4 Storey 209, 175 A.2d 405 (Del. 1961) (temporary adjournment does prevent the return of a bill under constitutional provision which mentions both, and therefore distinguishes between, "adjournment" and "final adjournment"); In re An Act to Amend an ActConcerning Public Utilities, 83 N.J.L. 303, 84 A. 706 (1912) (bills must be returned if at all to legislature while in session); State ex rel.Town of Norwalk v. Town of South Norwalk, 77 Conn. 257, 58 A. 759 (1904) (bills cannot be returned by the governor during a recess); and Peoplev. Hatch, 33 Ill. 9, 1863 WL 3219 (1863) (legislature must be in an organized condition, acting as a general assembly, before governor can return a bill).
Most relevant for our purposes are the majority-position Ohio and Colorado decisions cited above, which are based upon constitutional language very similar to art. 6, § 15 of the Arkansas Constitution. The Ohio Supreme Court stated:
 The majority of jurisdictions which have construed similar constitutional provisions have adopted the view advanced by respondents and held that only an adjournment sine die prevents delivery of the Governor's veto message. [Citations omitted.]
 These courts reasoned that the purpose for having an alternative provision for filing the veto message is to allow for the situation where, by virtue of adjournment, the legislature is prevented from reconsidering the bill and re-passing it over the executive veto. Thus, the majority of jurisdictions hold that the alternative provision does not apply where the bill is returned with the governor's objections during a temporary recess because the legislature still has the opportunity to reconsider the bill.
451 N.E.2d 235 at 236.
I cannot find any basis on which the Arkansas Supreme Court would depart from this prevailing or majority view. The cases to the contrary appear to be in large part based upon dissimilar constitutional language or upon an acceptance of the practical construction placed on such provisions).See e.g., Johnson City v. Tennessee Eastern Electric Co., supra
(distinguishing People v. Hatch, supra and State v. South Norwalk, supra
on these grounds).
It is my opinion that the alternative twenty-day procedure authorizing the Governor to file objections with the Secretary of State is applicable when the legislature has adjourned sine die and thus is not in a position to override any subsequent veto. In my opinion, therefore, Senate Bill 595, having remained with the Governor for five days without his signature, during a temporary recess of the General Assembly, became a law on April 19th, 2001.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] In computing the five days, the day of presentment is not included, Sundays are excepted and the last day is included. See Herbertv. Hall, 228 Ark. 500, 308 S.W.2d 828 (1958). The memorial day "Good Friday" is not excluded in my opinion. See A.C.A. § 1-5-106 and Stateex. Rel. Putnam v. Holm, 172 Minn. 162, 215 NW 200 (1927). April 19th
is the sixth day, the day after expiration of the five-day period. SeeHerbert v. Hall, supra. In computing the twenty days, it appears that the first day (the day of "adjournment") is excluded, Sundays are included,
and the last day is included. Id. See also Ops. Att'y. Gen. 79-122 and 87-241.
[2] Although the bill, under this set of facts, becomes a law on April 19th, the emergency clause nonetheless states its effective date as April 30, 2001.
[3] There are several Arkansas cases construing art. 6, § 15, but they involve adjournment sine die and not a temporary recess. See e.g., Stateex rel. Herbert v. Hall, 228 Ark. 500, 308 S.W.2d 828 (1958); Whaley v.Independence County, 212 Ark. 320, 205 S.W.2d 861 (1947); Walls v. Hall,202 Ark. 999, 154 S.W.2d 573 (1941); Monroe v. Green, 71 Ark. 527
(1903); and Dow v. Beidelman, 49 Ark. 325 (1887) aff'd 125 U.S. 680
(1888). It is clear, under the first two cases cited, that if the legislature adjourns sine die while the five-day period is still running, the twenty-day provision becomes applicable.
[4] In Wells, the Arkansas Supreme Court invalidated constitutional amendments proposed by the General Assembly under art. 19, § 22 during the extended recess on the basis that the General Assembly was not lawfully in regular session pursuant to the extended recess.