WILLIAMSON v. WILLIAMSON.

4-8201                                    204 S. W. 2d 785

Opinion delivered October 13, 1947.

R. W. Tucker and W. D. Murphy, Jr., for appellant.

Howard Hasting and Sam Robinson, for appellee.

ED. F. McFADDIN, Justice. Mrs. Ghaska Williamson filed suit for divorce and alimony and property settlement against her husband, Collie R. Williamson. Mrs. Williamson's alleged grounds for divorce were indignities, cruelty and habitual drunkenness. There was also an effort in the evidence to imply that he had committed acts of adultery. Mr. Williamson, by cross complaint, sought a divorce on the claim that he had been defrauded into contracting the marriage. The issue of property rights and alimony consumes a considerable portion of the record of 315 pages, which is also replete with many charges and countercharges. The chancery court denied a divorce to each party, but awarded Mrs. Williamson the sum of $100 per month as permanent alimony or separate maintenance, and also awarded her all costs and $300 attorney's fee. Both sides have appealed.

I. *Mrs. Williamson's Claim for Divorce.*

A. *Adultery.* Although the complaint did not charge it, there was some evidence tending to show Mr. Williamson guilty of alleged acts of adultery. The evidence was entirely insufficient to support a decree on that ground, even if it had been properly alleged.

B. *Indignities, Cruelty and Drunkenness.* The parties first became acquainted in 1938 in Fort Smith, Arkansas, where Mr. Williamson was employed as a salesman. After four or five months, Mr. Williamson was transferred to Missouri, and he took with him the future Mrs. Williamson and her four-year-old daughter—child

of a former marriage. The Williamsons were later married in 1938, and lived together until October, 1942, by which last-mentioned date they had returned to Fort Smith. Mrs. Williamson obtained a divorce in February, 1943, on the grounds of cruelty and indignities. Alimony and property rights were not involved in that decree.

A few days before the divorce decree was granted, Mr. Williamson received from his father substantial real properties in Independence county, now claimed to be worth in excess of $100,000; and Mr. Williamson removed to his properties shortly after receiving title. Notwithstanding the February, 1943, divorce decree, Mrs. Williamson went to Independence county in September, 1943, and she and Mr. Williamson lived together without any marriage ceremony until February 2, 1946, when they were remarried. They continued as husband and wife. until July 18, 1946, when Mrs. Williamson left him on account of her alleged grounds of divorce. This suit was filed on July 20, 1946, and in it she sought alimony of $250 per month and statutory dower in personal and real property. A hearing was held on the alimony claim on August 12, 1946, and that evidence has been duly brought into the record before us.

We forego detailing the complete evidence in the record, because to do so would give this opinion the flavor of a modern salacious novel. It is sufficient to say that Mrs. Williamson's testimony in the alimony proceedings shows that she is not entitled to a divorce on any of the grounds claimed in her complaint; and this for the reason now to be given. She testified that she and Mr. Williamson lived together—but unmarried—from 1943 to 1946; that, during such period, he was guilty of continuing indignities, cruelties and drunkenness; that, notwithstanding this, she married him. She introduced no corroborative evidence that, as a prerequisite to such remarriage, she exacted of him any promise of reformation; and she testified that his acts of indignities, cruelty and drunkenness were no worse after the February, 1946, marriage than prior thereto. She gave answers to questions as follows:

"Q. You testified that every time you mentioned to him about getting married, he cursed you and abused you and was mean to you, and in spite of all that you wanted to marry him? A. I either wanted to marry or leave him. Q. He didn't make you stay? A. Well, what else could I do? He had brought me back, but after he got me here he wasn't willing to settle anything. I wouldn't have stayed if I had had anything to leave him on. Q. You had as much as you had the other day. A. Naturally. Q. You stayed because you wanted to stay? A. I married because I wanted to. Q. No one made you stay after you married him. What did he do after you married him in February this year—what did he do? A. He did the same things he had been doing. Q. The same things he had been doing before you married? A. Yes, sir. Q. And has continued ever since? A. Yes, sir."

In the light of this testimony, it is obvious that before the remarriage Mrs. Williamson was well aware of Mr. Williamson's bad habits. He continued to be guilty of indignities, cruelty and drunkenness after they remarried, but she cannot use these acts as grounds for divorce, because she knew of them in advance. When parties live together in an illicit relationship simulating marriage, and one party is guilty of continuing acts of indignities, cruelty and drunkenness to the other, and they subsequently marry without any corroborated proof of a promise of reformation, and after the marriage the same indignities, cruelty and drunkenness continue in no greater degree than before, then, in such case, equity will not allow the continuing misconduct to be claimed as grounds for divorce.

We find no case in our reports with facts exactly like those in the case at bar, but there are cases from other jurisdictions that may be cited as persuasive of the statement just made. *Rankin* v. *Rankin,* 17 S. W. 2d 381, lists facts somewhat similar to those in the case at bar. There, the Kansas City (Missouri) Court of Appeals held that a wife, having married her husband for the third time with full knowledge of his disagreeable habits, could not assert such habits as grounds for divorce, since

his continuing bad conduct was the natural outcome of his previous and well-known and settled bad habits. In *Tilton* v. *Tilton*, 29 S. W. 290, the Court of Appeals of Kentucky said: " . . . and the cruelty of the husband, consisted in his persistent purpose to lead a life of dissipation; and this the unfortunate woman was apprised of, and assumed to risk, when taking him as her husband; and upon this state of facts the chancellor would have been justified in dismissing her petition, and certainly denying to her such relief as an absolute divorce."

The philosophy of the law applicable to a case like the one at bar is well expressed in *Caswell* v. *Caswell*, 64 Vt. 557, 24 Atl. 988, 33 A. S. R. 943, in these quoted words: "To entitle one to relief in a divorce court the party must come with clean hands. It is a general doctrine that a man shall not complain of what he knew . . . at the time of the marriage." See, also, the topic, "Ante-Nuptial Knowledge of Cause," in 19 C. J. 82 and in 27 C. J. S. 607.

We, therefore, affirm the chancery court in refusing Mrs. Williamson's divorce, not only for the reason already stated, but also for the additional reason that the testimony was sharply disputed, and the chancellor saw the witnesses and heard them testify, and we cannot say that his findings are against the preponderance of the evidence.

II. *Mr. Williamson's Claim for Divorce.* We likewise affirm the chancery court in refusing Mr. Williamson a divorce. Even if his wife had married him for his money and pretended a nonexisting love for him, and even if that were a ground for divorce—which we do not decide—nevertheless, he lived with her for several years before the marriage, knowing of her desire to marry him and obtain a "settlement." Furthermore, he lived with her for several months after the marriage, and never left her. His claim of "fraud" clearly appears to be an afterthought, and an attempted defense against a property settlement rather than a real claim for a desired divorce.

III. *Separate Maintenance.* The chancery court awarded Mrs. Williamson one hundred dollars per month as separate maintenance or permanent alimony, and we affirm this portion of the decree. Mr. Williamson was guilty of indignities, cruelty and drunkenness. Mrs. Williamson cannot claim these acts as grounds for divorce, for the reasons previously stated; but, as long as she remains away from him because of his misconduct, the award of one hundred dollars per month is justified by the evidence.

IV. *Attorney's Fee and Costs.* The chancery court allowed Mrs. Williamson three hundred dollars attorney's fee and all costs. Since she has been forced to defend Mr. Williamson's cross appeal, we increase the attorney's fee an additional one hundred and fifty dollars, and award all costs against Mr. Williamson.

With the said additional award of $150 attorney's fee, we affirm in all other respects the decree of the chancery court.