## Darcy *v.* Darcy, Appellant.

Argued November 17, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Joseph N. Cascio,* with him *Paul E. C. Fike,* and
*Fike and Cascio,* for appellant.

*Charles H. Coffroth,* for appellee.

OPINION BY WOODSIDE, J., January 16, 1962:

This appeal is from a decree of the Court of Common Pleas of Somerset County which granted a divorce to Thomas F. Darcy, Jr., on the grounds of indignities to the person and cruel and barbarous treatment.

The parties to this action, who are both now over sixty years of age, were married on August 18, 1955. They first met in 1952, when the defendant rented the plaintiff a second floor apartment located over the one in which she lived. He became a frequent visitor at the first floor apartment, and for over two months before their marriage, the parties lived together there.

The plaintiff had two previous marriages each ending in divorce. This was the defendant's fourth marriage. The first two ended in divorce, and the third terminated with the death of her husband, Harry Gray.

The plaintiff's final separation from the defendant took place on September 11, 1959. This action was instituted September 23, 1959. Previous to bringing this action, the plaintiff had left the defendant twice. On each occasion, he returned to cohabit with her after she

promised that her conduct towards him would improve. During the time of the second separation, which was from July 20 to Thanksgiving Day of 1957, the plaintiff instituted divorce proceedings which were subsequently withdrawn, and the plaintiff returned to his wife and lived with her until the date of his final separation.

An indignity to the person is an affront to the personality of another, a lack of reverence for the personality of one's spouse. The offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement. *Boyer v. Boyer*, 183 Pa. Superior Ct. 260, 271, 130 A..2d 265 (1957)... The record establishes this course of conduct by the defendant.

Disharmony, apparently produced by the violent and ungovernable temper of the defendant, existed throughout this marriage. The defendant would go into a rage with little or no provocation. Such acts as leaving the bathroom light on, or turning a tea kettle toward the wall, would cause her to curse the plaintiff, and to throw items such as slippers and shoes at him.

The plaintiff is a retired Army Captain. He is a skilled musician and for many years was the leader of an army band. Despite his accomplishments, the defendant subjected him to constant unfavorable comparison with her deceased husband, Harry Gray, especially as to his earning capacity. The defendant's phone was listed as Mrs. Harry Gray and as Gray Contracting Co. When she answered the telephone she would say, "M. (for Mary) Gray".

On different occasions the plaintiff was subject to humiliation and embarrassment in public by the defendant. One such incident occurred at Rascona's Bar when the plaintiff, leaving the defendant in the car, went into the bar to get a six pack of beer. Feeling that

he stayed in the bar too long, his wife struck him on the wrist with a flashlight when he returned and attempted to put the beer in the car. He then returned to the bar, and later his wife came in and berated and cursed the plaintiff and his friend, Elwood Yoder, in front of the patrons and the bartender. On another occasion the plaintiff was in Dirienzo's Hotel at the bar, and in front of customers and the bartender, the defendant again used profanity in berating the plaintiff. Dirienzo testified that she was creating a disturbance and was very angry. On still another occasion, when James G. Devlin and the plaintiff were driving home after a round of golf, the defendant drove up behind them and repeatedly bumped their car. The plaintiff stopped the car and let Devlin out. As he was leaving, Devlin overheard the defendant asking the plaintiff in a loud voice, "Who was that bum with you?"

The record is abundant with acts by the **defendant** which humiliated and embarrassed the plaintiff, and made his condition intolerable and life burdensome.

The record also supports a divorce on the grounds of cruel and barbarous treatment. Cruel and barbarous treatment consists of actual personal violence or a reasonable apprehension thereof, or such course of treatment as endangers life or health and renders cohabitation unsafe. *Hurley v. Hurley,* 180 Pa. Superior Ct. 364, 369, 119 A. 2d 634 (1956).

On many occasions, the defendant threw objects at the plaintiff, such as shoes, books or ash trays, and on one occasion hit the plaintiff on the shoulder with an electric clock. She also picked up the garden shears and attempted to use them against him as a dagger. On another occasion she picked up a poker from the fireplace and tried to hit the plaintiff with it. She kicked him and twisted his fingers, and several times she threatened to kill him.

The defendant denied that she was guilty of the misconduct testified to by the plaintiff and his witnesses, and contended that the plaintiff was the cause of arguments by his abusive conduct caused by excessive drinking. There is no credible evidence to support this contention. The plaintiff and his witnesses were believed by the master and their evidence appears credible to us, as it did to the court below.

The evidence supports the granting of the divorce.

So many divorce cases have been before this Court that almost every conceivable legal contention has been passed upon, but in this case we are presented with a new problem.

When the master was taking testimony, counsel for the defendant attempted to cross-examine the plaintiff and to offer evidence relating to the defendant's conduct toward the plaintiff during the time the parties lived together prior to their marriage. The master refused to allow the cross-examination and rejected the evidence which was offered by the defendant to show that her conduct toward the plaintiff had been the same prior to their marriage as it had been subsequent to their marriage.

Counsel for appellant claims that this was error. He has no Pennsylvania case upon which he can rely, but he has called our attention to a quotation from *Williamson v. Williamson*, 212 Ark. 12, 204 S.W. 2d 785, 787 (1947), which he asks us to adopt as the law of this Commonwealth. It is: "When parties live together in an illicit relationship simulating marriage, and one party is guilty of continuing acts of indignities, cruelty and drunkenness to the other, and they subsequently marry without any corroborated proof of a promise of reformation, and after the marriage the same indignities, cruelty and drunkenness continue in no greater degree than before, then, in such case, equity will not allow the continuing misconduct to be claimed as grounds for divorce."

This rule apparently had its origin in *Caswell v. Caswell*, 24 A. 988 (Vt. 1892). In that case the wife-complainant married the defendant after he was convicted of murder but before he was sentenced, and then after he was sentenced to the penitentiary for life she sought a divorce on the ground of the sentence to the penitentiary. The court refused the divorce saying that the plaintiff should not complain of what she knew at the time of marriage. In *Tilton v. Tilton*, 29 S.W. 290 (Ky. 1895), a divorce sought on the ground of habitual drunkenness was refused because the defendant was a drunkard prior to the marriage, "and this unfortunate woman was apprised of, and assumed to risk, when taking him as her husband." In neither of these two cases did the courts cite any authority for their holdings.

We were able to find three other cases, all brought on the ground of drunkenness, where the courts refused a divorce because the plaintiff knew of the drunkenness prior to marriage. *Wesley v. Wesley*, 204 S.W. 165 (Ky. 1918); *Rankin v. Rankin*, 17 S.W. 2d 381 (Mo. 1929); and *Kincaid v. Kincaid*, 43 So. 2d 108 (Miss. 1949).

The groping of the courts in these cases to find sound legal grounds upon which to rest their holdings is the best evidence of the strained construction they gave the law. The *Tilton* case refers to assumption of risk; the *Kincaid* case to estoppel; the *Caswell* case to clean hands; the *Wesley* case to condonation; the *Rankin* case to foreseeability or reasonable expectation, and the *Williamson* case simply generalized its reason with "equity will not allow it."

Although in some states equity courts have jurisdiction of divorce, in Pennsylvania divorce proceedings are statutory: *Middleton v. Middleton*, 187 Pa. 612, 614, 41 A. 291 (1898); *Cantor v. Cantor*, 70 Pa. Superior Ct. 108, 111 (1918); *Hooks v. Hooks*, 123 Pa. Superior Ct. 507, 509, 187 A. 245 (1936). This is true

even though the law must be applied not only in the light of the effect on the immediate parties, but also in the light of its effect on all organized society, 12 P.L.E., Divorce, §1, and even though the proceedings have been said to partake in some degree of an equitable nature. Freedman on Divorce, §108.

There is nothing in the statutes of this Commonwealth to indicate that the legislature intended to withdraw from a married person any of his grounds for divorce because he endured abuse from his spouse prior to their marriage. The application of such a doctrine would be tantamount to giving a license to a married person to inflict endless cruelty and indignities upon his spouse throughout their married life.

There are sociological reasons to reject the principle advocated by the appellant. The policy of the law is to encourage the marriage of two people living together in a meretricious relationship. To remove two of the most common grounds of divorce in such marriages, as the application of this doctrine would do, would tend to discourage such marriages.

In Pennsylvania the Supreme Court has refused to apply the doctrine in a case where the wife knew before marriage that the husband had a venereal disease. In *McMahen v. McMahen*, 186 Pa. 485, 40 A. 795 (1898), it was established that the disease was communicated to the wife by the husband before the marriage. In granting the divorce the Court, at page 492, said: "It is of no consequence that inoculation occurred before marriage. It is the continuation and constant presence of the disease after marriage, making her condition intolerable and endangering her health and life that entitles her to a divorce."

We can find nothing in the law of this Commonwealth which supports the appellant's contention. There are no legal or sociological arguments in any of

the above cases from other jurisdictions which move us to adopt the doctrine to which they subscribe.

The doctrine established by the above cited cases from other jurisdictions is stated in 27A C.J.S., Divorce, §58, as follows: "Knowledge by complainant of the cause for divorce at the time the marriage was contracted ordinarily is a bar to the suit." Even if we were to accept this doctrine as good law, we would not apply it to a divorce brought on the grounds of indignities or cruelty. These two grounds are and should be predicated upon the conduct of an offending spouse after marriage. The *Williamson* case, upon which the appellant relies, went beyond the intended boundaries of the doctrine. Previous thereto, the principle had been applied only when the plaintiff knew before marriage of the *cause* for divorce. The complainant should not be precluded from obtaining a divorce because the conduct complained of might have been predicted by the temperament of the offending spouse before marriage.

The doctrine has been generally applied only when a *condition* of the defendant is known to the plaintiff before marriage, as where the defendant is a habitual drunkard; it is not generally extended to conduct which may be the result of that condition. If a person marries one known to have been convicted of a crime should he be precluded from obtaining a divorce for the conviction and sentence of such spouse for crimes committed subsequent to marriage, because the plaintiff assumed the risk of the criminal tendencies of the offending spouse? Or, if a woman marries a man whom she knows to be ill-tempered, must she then remain subject to constant beatings throughout her married life? The absurdness of the questions is their answer. Even if we were to accept divorce proceedings as equitable rather than statutory, we would be unable to follow the few states which apply the above doctrine. We

can see no equity in allowing a married person to abuse his spouse with immunity because of something which transpired before their marriage.

The master properly refused to accept evidence on the conduct of the defendant prior to the time when the parties were married, because such evidence would have been irrelevant.

Decree affirmed.