## Cauffiel v. Cauffiel

*Kim R. Gibson*, for plaintiff.
*Robert Raphael*, for defendant.

SHAULIS, *J.*, February 17, 1981—This matter is before the court on the issues of alimony, counsel fees and equitable division of marital property.

## FINDINGS OF FACT

1. The parties were husband and wife, having been married November 2, 1974.

2. This was the first marriage of plaintiff, who was 53 years old at the time. It was the fourth marriage for defendant, who was 58 years old at the time of the marriage.

3. Defendant was divorced from her first two husbands, and her third husband by common law marriage, died.

4. A divorce decree was signed by this court on June 8, 1981 after affidavits and consents were filed by both parties on the grounds that the marriage was irretrievably broken.

5. At the time of the marriage, plaintiff was the sole owner of a parcel of land in Jenner Township, Somerset County, having erected thereon, a split level house of cedar and stone construction having approximately 1,480 square feet of living area. The

home was not completely finished and lacked among other things, a kitchen unit and the plumbing was not hooked up to the main bathtub; and it needed landscaping.

6. At the time of the marriage, defendant owned a mobile home which she had been living in and which she lives in at the present time; however, she has transferred title to her brother or jointly with him.

7. Plaintiff was employed at Bethlehem Steel Corporation for 25 years and in the year he was married, he earned $16,450, which ran to over $25,000 in 1979, but dropped to $9,186 in 1980 because of illness and at the present time, he collects $839 per month retirement and disability.

8. Defendant receives Social Security benefits in the amount of $230.10 per month.

9. A few months after the marriage, defendant induced plaintiff to put her name on the deed to his property but failed to tell her husband that she had received a $15,000 settlement about the same time from life insurance on the life of her deceased common law husband or that she had cashed the check and kept the money in a safe deposit box in her name only.

10. Defendant was willing to forego interest on $15,000 rather than have her husband find out she had the money.

11. Plaintiff turned over to his wife, his entire paycheck all through their marriage and she gave him a small amount for spending money.

12. Defendant manipulated the family money in and out of various checking accounts and purchased bonds for her relatives always keeping her name on them as co-owner.

13. Defendant filed a Spouse Abuse action

against plaintiff on June 7, 1979 and plaintiff did not contest the action, but agreed to allow her to live in the home while he lived in a small cottage on the premises. A short time later, it was brought to the attention of this court in a hearing, that she really wasn't living in the house, but had transferred all of the furniture and furnishings of value to her mobile home and had even taken up the carpet and put it in storage. Plaintiff filed for a divorce on June 18, 1979.

14. After a further hearing, the court allowed plaintiff to move back into the main house and defendant has continued to live in her mobile home with all of the furniture she had removed from the house.

15. An independent real estate broker placed a value on the real estate of $139,900 which appears to be the major asset in question except 23 government bonds in plaintiff's name in the amount of $50 each which are in the safe deposit box in Peoples State Bank for which defendant has the key.

16. Defendant, prior to her marriage to plaintiff, has worked as a beautician and a waitress, but is not licensed in Pennsylvania and has now retired on Social Security and support from plaintiff.

17. Although there is some evidence of drinking on the part of plaintiff, there is no credible evidence of any wrongdoing on his part and we conclude that defendant's calculated misconduct has been a substantially greater factor in the marriage breakdown than that of the husband based on the following:

a. We found plaintiff to be much more credible than the defendant and believe his testimony over hers on disputed issues.

b. Defendant deliberately attempted and succeeded in deceiving plaintiff about money matters.

c. Defendant diverted family money into various accounts with relatives.

d. Defendant has not been straightforward in this hearing or any other hearing before this court concerning this matter and has made obvious attempts at misleading and confusing, not only her husband, but in making it difficult for the court to search out the truth.

18. The parties lived together as husband and wife about four-and-one-half years, and have not cohabitated since June 1979.

## DISCUSSION

In arriving at an equitable distribution of the marital estate, we will confine ourselves mainly to the real estate and the 23 government bonds since defendant has made no claim to any other personal property and plaintiff has elected not to pursue any claim for the items taken from the common home or the monies which he claims she diverted.

Since we have had no other expression of value of the real estate, we will accept the figure furnished by the appraiser of $139,900.

While there have been a number of common pleas decisions going in various directions on the questions of equitable distribution, we are without guidance from the appellate court.

We note with interest, the decision in Bacchetta v. Bacchetta, 29 Chester Co. Rep., 167 (1980) which held that since the parties had ceased living as husband and wife, prior to the effective date of the present Divorce Code (July 1, 1980) it lacked authority to award equitable distribution of the assets and if we followed that line of reasoning, we would not make distribution but leave the parties to

partition since the title to the real estate, the bonds and other assets were placed in their present posture prior to the Divorce Code.

Judge Wettick, in an opinion covering three cases, Paul W. v. Margaret W.; Diana K. v. George K. and Harry Z. v. Regina Z., 130 P.L.J. 130 held that in making an equitable distribution of property, the starting point for considering relevant factors under Divorce Code Sec. 401(d) shall be an equal division of the marital property. We might agree with this position when dealing with property that has been jointly held by the parties for a long period of time, but only as a starting point and under no circumstances should it be considered a presumption in law or fact. See Cherry v. Cherry, 7 F.L.R. 2559-60 (Ohio 5. Ct., 6/10/81) where the court stated:

In using the partnership analogy, this Court in Wolfe did not intend to create a presumption, rebuttable or irrebuttable, that property be divided equally upon divorce; rather, a potentially equal division should be the starting point of analysis for the trial.

The New Jersey Supreme Court in Rothman v. Rothman, 65 N.J. 219, 320 A. 2d 496 (1974) rejected the position that a court should begin at a specific starting point and said:

The suggestion has been offered that in undertaking to effect an equitable distribution of marital assets, the trial court should, to establish a starting point, presumptively assign some proportion, generally mentioned as 50 percent of all eligible assets to each spouse. We disapprove of this proposal. No basis for it is to be found in the statute itself, it would import into our law, concepts now held

chiefly, if not solely, in those states where community property law principles have gained acceptance, and we foresee that it might readily lead to unjust results. Rejecting any simple formula, we rather believe that each case should be examined as an individual and particular entity. The point has been well expressed in an opinion of the Supreme Court of Wisconsin,

'The formula for division derives from the facts of the individual case. If it is argued that this approach gives great leeway and also places a heavy responsibility on trial courts in divorce cases, there is no gainsaying that fact. However, both flexibility and responsibility are called for by the endless variety of human situations that come to court in family cases. No two are exactly alike. [Lacey v. Lacey, 45 Wis. 2d 378, 173 N.W. 2d 142, 145 (1970)].'

Whether we follow the reasoning in the Rothman case, supra or the position taken by Judge Wettick in Paul W. v. Margaret W. et al. supra., it really doesn't make a great deal of difference but is a necessary exercise in mental gymnastics on the part of the trial judge.

Trying to arrive at an equitable distribution of marital property is somewhat akin to trying a case for "Too Fast for Conditions" under the Vehicle Code. In the first instance, the police officer determines what an unsafe speed is, and makes the arrest and then the District Justice second-guesses the police and so on up the judicial ladder, but nowhere in the code is there any help in determining when and what speed is "too fast for conditons"—so, it is with the determination of what is an equitable distribution. A great deal depends on

the sound discretion of the trial court, which must use all of its education, experience, knowledge and common sense to determine what is just and fair under the circumstances of each case. It is one thing to protect the public interest by endeavoring to prevent a party to a divorce from becoming a public charge, but, a court should no more lose sight of the goal of justice in a property distribution than it should in finding a father for an illegitimate child, which the courts have so often been accused of doing.

It appears to this court that too much effort may be used to punish a spouse for having married the wrong person and we do not believe this was the purpose of the legislature in enacting the Divorce Code.[1] Justice and fairness must be the first consideration and whether or not one party or the other becomes a public charge must take its place in the scheme of life.

In this case, the parties were married for a comparatively short time—about four and one-half years, and were married late in life; plaintiff at 53 and defendant at 58. Plaintiff was never married before and defendant three times before. Neither party is in good health, and it would be difficult for either party to work.

Plaintiff has an income of about $839 per month and defendant—$230.10. Neither party has contributed to the education, training or increased earning power of the other party. There is little or no opportunity of each party for future acquisitions of capital assets and income.

---

1. Compare Darey v. Darey, 197 Pa. Super. 100, 105 (1962), appeal from this Court, assumption of risk or estoppel as defense in divorce.

Defendant is the owner of the mobile home in which she lives, however, she has placed her brother's name on the title and plaintiff is making no claim or seeking an interest in the mobile home, but we must consider it along with all of the other facts since it does give her a place to live.

The marital home along with the 112 acre farm and other buildings was inherited by plaintiff from his parents. It had been a larger tract inherited by plaintiff and his sister but many years ago, and a long time before this marriage plaintiff and his sister had divided the land. There was nothing contributed by defendant to the cost of obtaining the real estate with perhaps the exception of the contribution which she may have made towards installing the kitchen and some work which was finished after she moved into the house. From the evidence and the manner in which defendant handled not only the family money, but her own, it is impossible to determine just what, if anything, she contributed. It does appear from the evidence that she was a proper housekeeper and thus, did contribute her time and energy to the upkeep of the home, while she lived there.

From the testimony in this case, as well as the testimony in the spouse abuse case, which are intertwined, it appears that she removed all of the furniture which she purchased during the marriage, but plaintiff is making no claim for that.

We cannot say, with any degree of certainty, that defendant has contributed very much in the acquisition, preservation or appreciation of the marital property, except the things mentioned above, whereas, plaintiff has spent most of his lifetime in acquiring the property.

We do not believe defendant should be left desti-

tute nor do we believe plaintiff should be penalized for having married her.

Counsel has inferred that had plaintiff not asked defendant to marry him, she might have had a "good, happy and successful marriage." Of course, we don't know what would have happened, had she married someone else, but we can only look at what happened to her marriages in the past and what happened in this one.

We are not attributing fault to either party that may have brought about this divorce since it was granted on the basis of "No Fault"; however, a marriage founded on deceit as was the case here, has little chance to be a happy one. We have difficulty seeing the reason for the secret accounts, the transferring of money from one account to the other, the purchase of bonds for nieces and nephews, keeping a large sum of money in a safe deposit box, and placing her brother and sisters names on accounts with her and finally changing the title to her mobile home at least three times, all without revealing any of it to the man she had just married, and who, at her request and urging, had placed her name on the deed to his property which was worth almost $140,000. It is not difficult to see which party to the marriage was acting in good faith in dealing with the marital property.

We will not force a sale of this property for the purpose of distribution.

We will distribute the joint real estate to plaintiff and award to defendant the sum of $18,000 of which $3,000 shall be paid within 60 days and the balance shall be paid to defendant within six months from this date.

After carefully examining the circumstances of both parties and realizing that neither party has

substantial income, but that both parties have a home to live in and defendant has some savings and social security, and taking into account the payment under the distribution of marital property we conclude that no award should be made for alimony. In arriving at this conclusion, we have taken into consideration all of the relevant factors including those listed under Section 501(b) of the Divorce Code.

On the basis on the evidence, there is no ready cash available to plaintiff to pay the distribution ordered by this court, and we must anticipate that plaintiff will have to mortgage his home to pay the distribution and will have to make repayments which will reduce the amount he has available to live on.

We will award the savings account and bonds held in the joint safe deposit box to plaintiff, which would appear to amount to about $3,000 total. We also award to plaintiff, the vehicle which he drives and to defendant, the vehicle which she drives.

Throughout the testimony, defendant testified that she received a considerable sum for a house she sold in New Jersey but no where have we been able to trace the fund, its whereabouts or amount.

ORDER

Now, February 17, 1981, upon consideration of defendant's claims for equitable distribution, alimony and counsel fees, it is hereby ordered that:

1. Plaintiff (husband) is awarded the home farm consisting of approximately 112 acres with dwelling and out building, and all furniture and fixtures presently in the home.

2. Defendant (wife) is awarded the mobile home in which she lives together with all furniture and furnishings.

3. Defendant is awarded the sum of $18,000 as equitable distribution, payable $3,000 within 60 days from the date hereof, and $15,000 payable within six months from the date hereof.

4. Plaintiff is awarded the bonds in his name in the joint safe deposit box at Peoples State Bank and the savings account at Johnstown Bank & Trust Co.

5. Plaintiff is awarded his personal vehicle, a van.

6. Defedant is awarded all of the accounts in her name alone or with other persons.

7. Defendant is awarded her personal car.

8. Defendant is awarded counsel fees from plaintiff payable to Robert Raphael, Esq. in the amount of $1,473 which we deem to be reasonable under the difficult circumstances of this case. These fees shall be paid to Robert Raphael, Esq. on behalf of defendant within 45 days from the date hereof.[2]

---

2. Compare Farrell v. Farrell and Burkhard v. Burkhard, both post.