CHARLES E. HEQUEMBOURG, APPELLANT, v. THE CITY OF DUNKIRK AND WILLIAM BOOKSTAVER AND OTHERS, RESPONDENTS.

*The construction and operation of an electric-light system by a city for its own and its inhabitants' benefit, is for a "city purpose" within section 11 of article 8 of the Constitution — the adjournment of the legislature, referred to in section 9 of article 4 of the Constitution, is the final adjournment and not an ordinary recess — chapter 485 of 1871, creating the board of water commissioners of Dunkirk, creates a new office within the meaning of section 2 of article 10 of the Constitution.*

By chapter 29 of 1888 the common council of the city of Dunkirk was authorized to raise a sum, not exceeding $10,000, for defraying the costs and expenses of procuring the necessary machinery, apparatus, fixtures, poles and wires for an electric-light system, and for defraying the costs and expenses of establishing and putting it in operation, and to issue bonds in the name of the city, to an amount not exceeding $10,000, to be paid by a general tax.

The fourth section of the act provided that when the electric apparatus and machinery are ready for use the board of water commissioners of the city shall be notified of such fact, and thereupon the exclusive control of operating and running the electric-light system shall be vested in such board of water commissioners, who shall have the exclusive right to make all necessary arrangements,

regulations and contracts for supplying the city, *and inhabitants thereof*, with electric light, and establishing the rates and charges therefor.

*Held*, that the act did not violate section 11 of article 8 of the Constitution of the State, which provides that "no county, city, town or village shall hereafter give any money, * * * nor shall any such county, city, town or village be allowed to incur any indebtedness, except for county, city, town or village purposes."

That the lighting of the streets and public places is one of the duties devolving upon the municipal government, and is a *city purpose* within the provisions of the Constitution.

That as light in dwellings is as important and essential as upon the streets, and promotes the general comfort, safety and welfare of the inhabitants, it may, when supplied in connection with that which is furnished by the municipality under its duty to the public, be regarded as an incident thereto and one of the purposes for which the municipality may properly contract.

The act in question was passed in the senate and assembly, and was sent to the governor on February 10, 1888. On the seventeenth of February, while the bill was in the hands of the governor, the legislature adjourned until the twenty-seventh day of February. The governor did not sign the bill, but after the expiration of ten days sent it to the office of the secretary of state, where it was filed. It was contended that the act did not become a law under the provision contained in section 9 of article 4 of the Constitution, that "if any bill shall not be returned by the governor within ten days (Sunday excepted), after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, *unless the legislature shall by their adjournment prevent its return ;* in which case it shall not become a law without the approval of the governor."

*Held*, that this contention could not be sustained.

That the adjournment referred to in this provision of the Constitution was the final adjournment at the close of the session, and not the ordinary recess taken from time to time during the continuance of the session.

*Soldiers' Voting Bill* (45 N. H., 607) followed.

It was also claimed that the board of water commissioners, upon whom the duty of operating the electric-light system was devolved, was an unconstitutional body for the reason that they were appointed by the legislature, by chapter 485 of 1871, and held their office for life, in violation of section 2 of article 10 of the Constitution.

*Held*, that the claim could not be maintained as the act, by which the members of the board of water commissioners were appointed, created a new office, the duties of which did not devolve upon anyone of the municipal officers previously existing.

*People* v. *Pinckney* (32 N. Y., 377) followed.

APPEAL from an order of the Erie Special Term of March 13, 1888, entered in Chautauqua county, March 28, 1888, denying the plaintiff's motion to continue an injunction.

*John G. Milburn*, for the appellant.

*Walter W. Holt*, for the respondents.

Haight, J.:

This action was brought to enjoin the municipal authorities of the city of Dunkirk from constructing an electric-light plant, and the issuing of the bonds of the city to pay therefor, pursuant to chapter 29 of the Laws of 1888. The act is entitled "An act to authorize the establishment of a system for lighting the city of Dunkirk with electric light and to empower the common council of said corporation to raise the necessary funds for that purpose." The first section of the act authorizes the common council of the city to raise a sum, not exceeding $10,000, for defraying the costs and expenses of procuring the necessary machinery, apparatus, fixtures, poles and wires for an electric-light system, and for defraying the costs and expenses of establishing and putting it in operation. The second section authorizes the common council of the city to issue bonds in the name of the city to the amount of not exceeding $10,000, and to raise the money provided for by the preceding section, and to add to the general tax in each year the amount of the principal and interest of such bonds as shall, in that year, mature and become due and payable. The third section authorizes the common council to make the necessary arrangements, regulations and contracts for the putting up of the necessary apparatus for lighting the city with electricity, and doing all acts necessary to be done in and about purchasing and putting in operation the electric-light system. The fourth section provides that when the electric light apparatus and machinery are ready for use, the board of water commissioners of the city shall be notified of such fact, and, thereupon, the exclusive control of operating and running the electric-light system shall be vested in such board of water commissioners, who shall have the exclusive right to make all necessary arrangements, regulations and contracts for supplying the city and inhabitants thereof with electric light and establishing the rates and charges therefor.

It is contended that this act is in violation of article 8, section 11 of the Constitution. That section provides that " no county, city, town or village, shall hereafter give any money, etc., * * * nor shall any such county, city, town or village, be allowed to incur any indebtedness, except for county, city, town or village purposes."

The question is as to whether the issuing of bonds to establish an electric-light system, for the purpose of supplying the city and the

inhabitants thereof, is prohibited by this provision of the Constitution. The question thus presented is not free from difficulty. It involves the determination of what is a city purpose, for which an indebtedness may be incurred. This provision of the Constitution was added in 1874, and many of the cases to which our attention has been called arose prior to that date. We think it may safely be assumed that the lighting of the streets and public places is one of the duties devolving upon the municipal government, and is a city *purpose* within the provisions of the Constitution. The care, management and control of the public streets devolve upon the city government, and it is the duty of the city to maintain them in such condition that the public, by the exercise of due care, may pass safely thereon. In the darkness of the night, in crowded thoroughfares, light is an important aid, largely tending to promote the convenience, as well as the safety, of the traveling public, and the duty to supply it, under such circumstances, devolves upon the city. Whilst light in the private dwelling may be equally important, so far as the inhabitants of the dwelling are concerned, its use is more of a private nature, and it cannot be successfully argued that it is the duty of the municipality to supply it. But may it not do so, in its discretion, in connection with lighting the streets? Numerous cases have arisen in which large and extensive water-works had been established for the purpose of supplying cities and villages with pure and wholesome water. In such cases water has been furnished to private consumers at fixed rates, and the power to do this has been sanctioned by the courts as one properly exercised by the municipal government, pure and wholesome water being recognized as necessary to preserve the public health. And in various cities gas-works have been established, in which light has been supplied by the municipality to private residences at a fixed charge, as well as used for the lighting of the streets.

Dillon, in his work on Municipal Corporations (vol. 1, § 27), says: " Powers or franchises of an exceptional and extraordinary nature may be, and sometimes are, conferred upon municipalities such as are frequently conferred upon individuals or private corporations; thus, for example, a city may be expressly authorized, in its discretion, to erect a public wharf and charge tolls for its use; or to supply

its inhabitants with water or gas, charging them therefor and making a profit thereby. In one sense such powers are public in their nature, because conferred for the public advantage. In another sense they may be considered private because they are such as may be, and often are, conferred upon individuals and private corporations and result in a special advantage or benefit to the municipality as distinct from the public at large."

In the case of *Wheeler et al.* v. *Philadelphia* (77 Penn. St., 338), it was held that the debts contracted for the construction and operation of gas-works owned by the city of Philadelphia must be paid by the city, and that such indebtedness was not in violation of the Constitution. The court, in its opinion, states : "As a local sovereign, it (the city), had no authority to enter into the business of manufacturing and selling gas, for its sovereignity did not extend to such subjects any more than it did to almost any other manufacture. * * * While it is no part of the ordinary and necessary duties of a municipal corporation to supply its citizens with gas and water, it is, nevertheless, true that it may lawfully do so." (*The Western Saving Fund Society* v. *The City of Philadelphia*, 31 Penn. St., 175.)

In the case of the *Lehigh Water Company's Appeal* (102 Pa. St., 515–528) the court, in commenting upon the gas cases, says that they establish the principle that a municipal corporation may perform the functions of a private corporation, in supplying its citizens with gas and water, but that, by doing so, it does not lose its distinctive municipal character.

In the case of *Olmstead* v. *The Proprietors of the Morris Aqueduct* (47 N. J. Law, 311) it was held that the supplying of water to the inhabitants, by the company, constituted a public use.

In the case of the *City of Rochester* v. *The Town of Rush* (80 N. Y., 302–310) it was stated that the water-works could not be regarded as private property, as distinguished from property held by the city for public use. (See, also, *Bailey* v. *The Mayor, etc.*, 3 Hill, 531–539.)

We regard these cases as establishing the power of a municipal government, in its discretion, to supply gas and water to the inhabitants thereof, and that it may charge a reasonable compensation therefor ; that whilst it is under no duty to supply private consumers, if it undertakes to do so the service is public in its nature,

and must be to all demanding it, and at a fixed and uniform compensation. The clause of the Constitution under consideration, however, did not exist at the time the cases referred to were considered, and it remains to be determined as to whether it has effected a change. In order to justify the incurring of the indebtedness authorized by the bill, it must be determined to be for a city purpose, within the provisions of its charter. What is or what is not a municipal purpose is, in many cases, doubtful and uncertain, and it is the duty of the courts in such cases to give weight to the legislative determination and not to annul its acts, unless it clearly appears that the act was not authorized. (*People ex rel. Murphy* v. *Kelley*, 76 N. Y., 475–489.)

The supplying of water to a city usually involves a large expenditure of money in the laying of mains through the streets through which the water is distributed. It is used by the city in sprinkling and cleansing the streets, avenues and public places, and in the extinguishment of fires. If independent works had to be constructed to supply the inhabitants with water for domestic purposes, the expenses would be largely increased. To avoid this, cities and villages have supplied water for domestic purposes, and in so doing have promoted the health and cleanliness of the inhabitants; and, inasmuch as the supply to the inhabitants has been made in connection with that which was for the use of the city in the performance of its municipal duties, it has been sanctioned and approved; and we do not understand that, by adopting the clause of the Constitution in question, it was intended to deprive them of that right. If we are correct in this view, we fail to see why gas or electric-light works may not be sanctioned upon the same theory. The lighting of the streets by gas involves the necessity of laying mains through the streets, with which the lamps may be supplied with gas; and, in lighting by electricity, the stringing of wires or the laying of conduits, through which the electricity may be conveyed. Light in dwellings is as important and essential as upon the streets, and promotes the general comfort, safety and welfare of the inhabitants; and when it is supplied in connection with that which is furnished by the municipality, under its duty to the public, we think it may be regarded as an incident thereto, and one of the purposes for which the municipality may properly contract.

It is contended that the act in question never became a law. It appears that the act was passed in the senate and assembly and was sent to the governor on the 10th day of February, 1888; that on the seventeenth day of February, while the bill was in the hands of the governor, the legislature adjourned until the twenty-seventh of February. The governor did not sign the bill, but after the expiration of ten days sent it to the office of the secretary of state where it was filed. It is contended that it did not become a law, under article 4, section 9 of the Constitution, which provides that "every bill which shall have passed the senate and assembly shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it, but if not he shall return it with his objections to the house in which it shall have originated, which shall enter the objections at large upon the journal and proceed to reconsider it. * * * If any bill shall not be returned by the governor within ten days (Sundays excepted), after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature shall by their adjournment prevent its return, in which case it shall not become a law without the approval of the governor. No bill shall become a law after the final adjournment of the legislature unless approved by the governor within thirty days after such adjournment." The final sentence was added by the amendment of 1874, doubtless for the purpose of limiting the time within which the governor could approve the bill after the final adjournment. It was not intended to change the construction or meaning of the provisions that precede it. The question is, therefore, what is to be understood from the phrase "unless the legislature shall by their adjournment prevent its return." This question is identical with the one raised in the case of the *Soldiers' Voting Bill* (45 N. H., 607), in which case it was held that the adjournment referred to was not the ordinary recess taken from time to time during the continuance of the session, but was the final adjournment at the close thereof. Without stopping to discuss the question further, we are inclined to the opinion that we should follow the construction given in the New Hampshire case, which was also followed by the attorney general in his opinion in reference to the act to change the corporate title of the Bankers' Life Insurance and Trust Company, appearing in the Session Laws of 1881 (chap. 707, p. 942).

It is also claimed that the board of water commissioners, upon whom the duty of operating the electric-light system is devolved, is an unconstitutional body, for the reason that they were appointed by the legislature and hold their office for life. The board of water commissioners of the village of Dunkirk was created by chapter 485 of the Laws of 1871. The act names John S. Beggs and seven others as the board of water commissioners of the village. This is claimed to be in violation of article 10, section 2 of the Constitution, which provides that all city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns or villages, or some division thereof, or appointed by such authority thereof as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this Constitution, and all officers whose office may hereafter be created by law, shall be elected by the people or appointed as the legislature may direct. The board of water commissioners, thus created, are empowered to organize by the election of a president, secretary and treasurer, who shall hold their offices for a stated period; to hold monthly meetings; to purchase necessary grounds; to erect buildings; to put in machinery, lay pipes and hydrants; to issue bonds in the name of the village for an amount not to exceed $100,000; to appropriate the money received for the use of water furnished by the commissioners to the payment of necessary expenses connected with the running and repair of the works; to pay the interest on the bonds and the principal when it matures and becomes due; to make an annual statement of the money necessary to run the works to the trustees of the village, who are required to raise the amount thereof by tax. It appears to us that the act creates a new office, the duties of which did not devolve upon any one of the municipal officers previously existing, and that the case of the *People* v. *Pinckney* (32 N. Y., 377) is controlling upon the question. (See, also, *People ex. rel. Wood* v. *Draper*, 15 N. Y., 532; *People ex rel. Kingsland* v. *Palmer*, 52 id., 83; *People ex rel. Kilmer* v. *McDonald*, 69 id., 362.)

The order appealed from should be affirmed, with ten dollars costs and disbursements.

BRADLEY and DWIGHT, JJ., concurred; BARKER, J., not sitting.

Order affirmed, with ten dollars costs and disbursements.