## HAWAIIAN AIRLINES, LIMITED, A HAWAII CORPORA-TION *v.* PUBLIC UTILITIES COMMISSION OF THE TERRITORY OF HAWAII.

### No. 4052.

ARGUED MARCH 19, 1959.                    DECIDED APRIL 16, 1959.

RICE, C. J., MARUMOTO, J., AND CIRCUIT JUDGE HEWITT
IN PLACE OF STAINBACK, J., DISQUALIFIED.

### OPINION OF THE COURT BY MARUMOTO, J.

This is a submission on agreed facts by Hawaiian Airlines, Limited, a corporation engaged in the operation of an aerial transportation enterprise as a common carrier, and Public Utilities Commission of the Territory of Hawaii, a regulatory body having general supervision of all public utilities as defined in R.L.H. 1955, § 104-1.

The precise question for decision is whether Hawaiian Airlines is liable for the payment to the commission of the fees charged against it as a public utility under R.L.H. 1955, § 104-27, in July 1957. The answer to that question depends upon whether Senate Bill No. 412 of the regular session of the twenty-ninth legislature of the Territory became law. Hawaiian Airlines is not liable if the bill was duly enacted into law.

Whether the bill became law depends upon whether a pocket

veto occurs in the following situation: (a) the bill is passed by the legislature at the regular session; (b) it is delivered to the governor after the legislature adjourns the regular session sine die; (3) while the governor has it under consideration, the legislature, composed of the same members as in the regular session, is convened in special session; (4) on the tenth day (Sundays excepted) after its delivery to the governor, the legislature is in session; (5) it is not signed by the governor nor is it returned by him to the legislature with his objections.

The parties have agreed to the following facts in the submission: On January 1, 1957, Hawaiian Airlines was a public utility subject to supervision of the commission. As such, it was liable for the payment to the commission of the fees imposed by R.L.H. 1955, § 104-27. On February 20, 1957, the twenty-ninth legislature convened and organized in regular session. The legislature continued in regular session until May 7, 1957, when it adjourned sine die. On May 28, 1957, the legislature convened in special session, upon the call of the governor. The special session adjourned sine die on June 8, 1957. The members of the legislature who convened in the special session were identical with the members who convened in the regular session. On May 7, 1957, Senate Bill No. 412 passed third reading in both houses of the legislature. The bill amended R.L.H. 1955, § 104-1, so as to exclude aerial transportation enterprises from the definition of public utilities. The bill was delivered to the governor on May 24, 1957. The tenth day (Sundays excepted) after the delivery fell on June 5, 1957. The governor did not sign the bill; nor did he return it to the legislature. On July 12, 1957, the commission presented to Hawaiian Airlines its claim for fees alleged to be due in July 1957 under R.L.H. 1955, § 104-27.

Hawaiian Airlines takes the position that the bill became law by reason of the governor's failure to return it to the legislature with his objections on June 5, 1957, when the legislature was in session and could have considered the objections. The position of the commission, on the other hand, is that the bill did not become law because the governor did not sign it and the legislature, by adjournment sine die of the regular session, prevented the governor from returning it with his objections to the session that passed it.

The statutory provision pertinent to the question at hand is section 51 of the Organic Act. It reads as follows:

"§ 51. *Failure to sign or veto.* That if the governor neither signs nor vetoes a bill within ten days after it is delivered to him it shall become a law without his signature, unless the legislature adjourns sine die prior to the expiration of such ten days.

"If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner, as if he had signed it, unless the legislature by their adjournment prevents its return, in which case it shall not be a law."

The section is clear enough, except that, in describing the contingency that occasions a pocket veto, the expression "unless the legislature adjourns sine die" is used in the first paragraph and the expression "unless the legislature by their adjournment prevents its return" is used in the second paragraph.

The question would not have merited our consideration if the expression "unless the legislature adjourns sine die" were used in the second paragraph, as well as in the first. Then, under the plain and unambiguous language of the statute, Senate Bill No. 412 would not have become law because the twenty-ninth legislature, after passing the bill at the regular session, adjourned the session sine die within ten days (Sundays excepted) of its presentation to the governor.

But the use of the expression "unless the legislature by their adjournment prevents its return" in the second paragraph affords Hawaiian Airlines a basis for arguing that the bill became law. The argument is that the sine die adjournment of the regular session did not prevent the return of the bill to the legislature because the same legislature was again in session on the last day allowed the governor to sign the bill or to return it with his objections; "that it is the *opportunity* to review the governor's objections that is controlling rather than the particular character of the adjournment that might be involved"; and that "while the legislature cannot deprive the governor of the power of active veto, the governor cannot deprive the legislature of its power to re-examine a bill it passed if it is capable of doing so."

In construing a statute, we aim to ascertain and give effect to legislative intent. But that intent, in order to be given effect, must be expressed or reasonably appear from the language used in the statute. (*Public Utilities Commission* v. *Narimatsu*, 41 Haw. 398, 401; *Territory* v. *Choy Dan*, 20 Haw. 1, 3.) Under the language of the Organic Act, the character of the adjournment is determinative of the occurrence of a pocket veto. Nowhere in the Organic Act is there an indication that the right of the legislature to consider the governor's objections, once lost by a sine die adjournment of the regular session, may be revived by the convening of a special session.

The fact that different expressions are used in characterizing the adjournment that occasions a pocket veto is of no real consequence. In the final analysis, they have reference only to sine die adjournment. Decisions construing the expression "unless the legislature by their adjournment prevents its return" in state constitutions hold that sine die adjournment is the only type of adjournment that prevents the return of the bill. (*State* v. *Joseph*, 175 Ala. 579, 57 So. 942; *Harpending* v. *Haight*, 39 Cal. 189, 2 Am. Rep. 432; *State* v. *Michel*, 52 La. Ann. 936, 27 So. 565; *Opinion of Justices*, 3 Mass. 567; *State* v. *Holm*, 172 Minn. 162, 215 N.W. 200; *Miller* v. *Hurford*, 11 Neb. 377, 9 N.W. 477; *Re Soldiers' Voting Bill*, 45 N.H. 607; *Hequembourg* v. *Dunkirk*, 49 Hun. 550, 2 N.Y.S. 447; *Corwin* v. *Comptroller General*, 6 S.C. 390; *Johnson City* v. *Tennessee Eastern Electric Co.*, 133 Tenn. 632, 182 S.W. 587.) In *Quebradillas* v. *Executive Secretary*, 27 P.R.R. 138, 154, the Supreme Court of Puerto Rico, in construing a similar provision in section 34 of the Organic Act of Puerto Rico, stated: "It appears from the act itself that the Congress had in mind three kinds of adjournment: (1) One which either house may take of its own accord, not to exceed three days; (2) a temporary adjournment of both houses for more than three days by mutual consent; and (3) a final adjournment when the Legislature adjourns *sine die*. The first and second do not prevent the reconsideration of a bill which the Governor disapproves; the third does prevent its return, because after final adjournment the Legislature cannot reconsider such bills. It follows from what has been said that only an adjourn-

ment *sine die* can prevent the return of a bill, and this is the only kind of adjournment referred to in section 34 of the Organic Act."

The argument on the part of Hawaiian Airlines also implies that the governor deprives the legislature of its right to re-examine the bill by his refusal to return it with his objections. The answer to the argument is that a pocket veto is occasioned solely by the conduct of the legislature and cannot be ascribed to any action of the governor.

Under the Organic Act, there is only one regular session, lasting not more than sixty days, excluding Sundays and holidays, during the life of a legislature. The legislature may voluntarily adjourn the regular session sine die before the expiration of such sixty days. The Organic Act compels the legislature to adjourn the session sine die at the close of the sixtieth day, unless the governor extends it.

It is stated in the *Pocket Veto Case,* 279 U.S. 655, 678, with regard to a pocket veto occasioned by a sine die adjournment of Congress before the expiration of the time allowed the President to consider a bill: "And it is plain that when the adjournment of Congress prevents the return of a bill within the allotted time, the failure of the bill to become a law cannot properly be ascribed to the disapproval of the President—who presumably would have returned it before the adjournment if there had been sufficient time in which to complete his consideration and take such action—but is attributable solely to the action of Congress in adjourning before the time allowed the President for returning the bill had expired." The same may be said of a pocket veto caused by a sine die adjournment of our legislature before the expiration of the prescribed duration of the regular session and the expiration of the time allowed the governor to consider the bill.

Where the regular session is adjourned sine die at the expiration of the sixtieth legislative day under the mandate of the Organic Act, a pocket veto is the consequence of the procrastination of the legislature in not presenting the bill to the governor within the time allotted to him for its consideration. The governor may bail the legislature out of such consequence by extending the session for not more than thirty days. He is not obligated to do so.

If the governor grants an extension, the legislature may continue

any unfinished business of the regular session because an extended session is a continuation of the regular session. But a special session is not a continuation of the regular session. It is a new session, like a Congressional session convened by the President on extraordinary occasion, of which it is stated in Jefferson's Manual, section LI, as follows: "The Constitution authorizes the President 'on extraordinary occasions, to convene both Houses, or either of them.' *Constitution, I, 3.* If convened by the President's proclamation, this must begin a new session, and of course determine the preceding one to have been a session."

We have not found any American precedent as to whether a legislature may resume consideration of any unfinished business of the regular session if it is subsequently convened in special session. Logically, it may not, especially in the case of a legislature like ours which meets only once in regular session during its life. We think that, under the scheme embodied in the Organic Act, if there is public necessity for the completion of any business which remains unfinished at the end of the prescribed duration of the regular session, the proper procedure for the legislature to follow is to obtain an extension from the governor and to complete the business at the extended session.

In English parliamentary practice, "Prorogation puts an end to the session; and then such bills as are only begun and not perfected, must be resumed *de novo* (if at all) in a subsequent session." 1 Blackstone, *Commentaries,* 186. Prorogation is the termination of a session of the Parliament by the command of the Crown. Our legislature adjourns sine die at the end of the time prescribed for the regular session under the requirement of the Organic Act. Thus, we think that the English practice of putting an end to all unfinished business upon the prorogation of a Parliamentary session, by analogy, is applicable to our legislature.

The Congress of the United States originally followed the English practice. Under the present practice, legislative business which remains undetermined at the close of one session is resumed at the commencement of the next session of the same Congress. (Senate Manual 1957, Rule XXXII; House Manual and Rules 1957, § 901.) The Senate rule provides that "all papers referred to com-

mittees and not reported upon at the close of a session of Congress shall be returned to the office of the Secretary of the Senate, and be retained by him until the next succeeding session of that Congress, when they shall be returned to the several committees to which they had previously been referred."

The *Pocket Veto Case, supra,* involved a bill passed by the Sixty-Ninth Congress at its first session and presented to the President less than ten days (Sundays excepted) before the sine die adjournment of the first session. The President is required to return the bill to the House in which it originated, if the adjournment does not prevent such return. The Supreme Court of the United States held that the adjournment prevented the return of the bill, despite the argument that the bill could have been returned to the Senate in which it originated, by delivery to the Secretary of the Senate, and despite the practice of the Senate with regard to the resumption of unfinished legislative business at a subsequent session.

In *Wright* v. *United States,* 302 U.S. 583, the court held that the fact that the Senate, in which the bill in question originated, was in recess on the last day on which the President could have returned the bill, did not prevent the return because delivery to the Secretary of the Senate constituted delivery to the Senate.

The conclusion to be drawn from the *Pocket Veto Case* and *Wright* v. *United States* is that the type of adjournment is determinative of the occurrence of a pocket veto, that a sine die adjournment, even though it be at the close of the first session and not at the end of the second session of Congress, results in pocket veto, while a recess does not bring about such result.

It is the decision of this court that Senate Bill No. 412 of the twenty-ninth legislature did not become law, and that Hawaiian Airlines, Limited, is liable to the Public Utilities Commission of the Territory of Hawaii for the payment of the fees due in July 1957 under R.L.H. 1955, § 104-27.

*R. G. Dodge (Heen, Kai, Dodge & Lum* on the briefs) for plaintiff.

*Willson C. Moore, Jr.,* Special Deputy Attorney General (*Herbert Y. C. Choy,* Attorney General, with him on the brief) for defendant.