HENDRICKS, SECRETARY OF STATE OF INDIANA *v.* STATE EX REL. NORTHWEST INDIANA CRIME COMMISSION, INC. ET AL.

[No. 30,487. Filed February 10, 1964. Corrected opinion filed February 17, 1964.]

*Edwin K. Steers,* Attorney General, *J. Van Brown,* Assistant Attorney General, for appellants.

*O. H. Roberts,* of Evansville, for The Indiana Prosecutor's Association, amicus curiae.

*Frank E. Spencer,* of Indianapolis, *R. D. Reading* and *McCallen & Reading,* of Wabash, for appellees.

ARTERBURN, J.—This is an appeal from an action of mandate filed by the appellees, *Northwest Indiana Crime Commission, Inc., et al.* v. *Charles O. Hendricks, Secretary of State of the State of Indiana.* The action was brought to mandate the Secretary of State to print, certify and distribute Senate Enrolled Act No. 339 of the 93rd General Assembly of the State of Indiana as a duly enacted law of the state. The lower court granted the relief asked.

The complaint is based upon the theory that the Governor failed to act upon the bill within three (3) days (Sunday excepted) after it was presented to him, as provided in the Constitution, and it therefore became a law without his signature. The authority for this action is based upon *State ex rel. Mayr, Secretary of State* v. *Marion Circuit Court* (1931), 202 Ind. 501, 176 N. E. 626.

The bill in general authorizes a change of prosecuting attorney and the appointment of a special prosecuting attorney upon the proof of bias, prejudice, or voluntary inaction of such official when racketeering, professional gambling, corruption, and high crime is found to exist in any county since the citizens are helpless in their attempts to have an active, good-faith prosecution of such alleged crimes. It is said the bill is modeled somewhat after a New York statute enacted for the purposes of effectively prosecuting syndicated gambling and racketeering in that state. Although some claim is made that the constitutional right of a prosecuting attorney to act or refuse to act as he personally pleases with immunity in the local prosecution of crime, we are not impressed with such contentions, since there is as much if not greater reason for a change of prosecuting attorney if prejudice exists, as in the case of a circuit judge who

is also a constitutional officer. In fact, there is a duty on the court to relieve a prosecuting attorney where he is disqualified by reason of prejudice or hostility towards the state's interest. *State ex rel. Latham* v. *Spencer C. C.* (1963), 244 Ind. 552, 194 N. E. 2d 606.

The Constitution of the State of Indiana provides as follows:

> "Every bill which shall have passed the General Assembly, shall be presented to the Governor; if he approve, he shall sign it; but if not, he shall return it, with his objections, *to the House in which it shall have originated;* which House shall enter the objections, at large upon its journals, and proceed to reconsider the bill. If, after such reconsideration, a majority of all the members elected to that House shall agree to pass the bill, it shall be sent, with the Governor's objections, to the other House, by which it shall likewise be reconsidered; and, if approved by a majority of all the members elected to that House, it shall be a law. *If any bill shall not be returned by the Governor within three days, Sundays excepted, after it shall have been presented to him, it shall be a law, without his signature, unless the general adjournment shall prevent its return; in which case it shall be a law, unless the Governor, within five days next after such adjournment, shall file such bill, with his objections thereto, in the office of Secretary of State; who shall lay the same before the General Assembly at its next session, in like manner as if it had been returned by the Governor.* But no bill shall be presented to the Governor, within two days next previous to the final adjournment of the General Assembly." (Our italics) Ind. Const. Art. 5, §14 (1851).

The factual background to which the application of this constitutional amendment is pertinent is as follows:

The 93rd General Assembly passed Senate Enrolled Act No. 339 and the same was presented to the Governor

of this State on March 9, 1963. This was Saturday. The General Assembly adjourned generally on March 11th. The Governor immediately thereafter called a special session of the legislature to convene the next day, March 12, 1963. The appellees contend that the Governor had three days, not including Sunday, in which to sign the bill (Senate Enrolled Act No. 339), or return it, with his objections, after it was presented to him on March 9, 1963; and that pursuant to the express provisions of Art. 5, §14 of the Indiana Constitution, since the Governor was not prevented from returning it by reason of the special session, it became a law without his signature.[1]

All the parties hereto have made reference to, cited and reviewed the constitutional history and legislative journals in their briefs and arguments. It seems to us little, if any, light is thrown upon the question here or meaning of this section of the Constitution from that source.[2] Likewise, a search of cases from various jurisdictions is not helpful in but very few instances. We find none of them dealing with a special session immediately following a regular session where the constitutional provision is worded exactly as that in Indiana. However, other states have somewhat similar

---

1. From the briefs and in argument we are reminded that there are other bills whose validity as a statute turn upon the same points by reason of the special session immediately following the regular session of 1963: Senate Enrolled Bill No. 160 (Reapportionment bill), No. 132 (Kerr-Mills bill), No. 1127 (Repealing requirements with reference to bank examiner reports to Board of Directors).

2. Reference is made to the fact that the Senate Journal shows that Senate Enrolled Bill 160 was returned to the Secretary of State and then to the Senate for reconsideration upon the theory that the Governor vetoed the same, and that by one vote the Governor's action had been sustained. This one example can not be accepted as a custom or practice, particularly in view of the fact that the three other bills similarly involved in the question here were never resubmitted to the Senate.

constitutional provisions to that of Indiana, particularly Kentucky and New York.

Article I, §7(2) of the United States Constitution reads as follows:

"Every bill which shall have passed the house of representatives and the senate, shall, before it become a law, be presented to the President of the United States; if he approve he shall sign it, but if not he shall return it, with his objections to that house in which it shall have originated, who shall enter the objections at large on their journal, and proceed to reconsider it. If after such reconsideration two-thirds of that house shall agree to pass the bill, it shall be sent together with the objections, to the other house, by which it shall likewise be considered, and if approved by two-thirds of that house, it shall become a law. But in all such cases the vote of both houses shall be determined by yeas and nays, and the names of the persons voting for and against any bill shall be entered on the journal of each house respectively. If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the congress, by their adjournment, prevent its return, in which case, it shall not be a law."

In *Okanogan, etc., Indian Tribes* v. *United States* (1929), 279 U. S. 655, 49 S. Ct. 463, 73 L. Ed. 894, the United States Supreme Court held a bill passed by congress does not become a law when the President is prevented from returning it to the house from which it originated, by an adjournment terminating the session before the expiration of the ten day calendar period. This case gives quite a considerable discussion of the matter and turns purely, in our opinion, upon the fact of whether or not the congress is in session at the time the ten day period has run and whether or not the President, as a result of congress not being in session,

is "prevented" from thus returning the bill to the congress. The court stated:

> "We think that under the constitutional provision the determinative question in reference to an 'adjournment' is not whether it is a final adjournment of Congress or an interim adjournment, such as an adjournment of the first session, but whether it is one that 'prevents' the President from returning the bill to the House in which it originated within the time allowed. It is clear, and, as we understand, is not questioned, that since the President may return a bill at any time within the allotted period, he is *prevented* from returning it, within the meaning of the constitutional provision, if by reason of the adjournment it is impossible for him to return it to the House in which it originated on the last day of that period." (Our italics) *Okanogan, etc., Indian Tribes* v. *United States, supra,* at 680.

The United States Constitution refers only to an "adjournment" (temporary or sine die), while the Indiana Constitution refers specifically to a "general adjournment" (or a sine die adjournment). It follows, therefore, that an interim or temporary adjournment could prevent the return of a bill by the President under the United States Constitution, while only a general adjournment (not a temporary or interim adjournment) *must concur* under the Indiana Constitution with a *preventing* factor to avoid the three day period. In other words, interim or temporary adjournments of the General Assembly of Indiana during a session do not affect the three day period (Sundays excepted) within which the Governor must return a bill, if he desires to veto the same.

For cases where state constitutions use the word "adjournment" only, as distinguished from general or sine die adjournment, as in the Indiana Constitution,

See:  *State ex rel. Sullivan* v. *Dammann* (1936), 221
Wis. 551, 267 N. W. 433; *Wood* v. *State Administrative
Board* (1931), 255 Mich. 220, 238 N. W. 16; *In Re
an Act Concerning Public Utilities* (1912), 83 N. J. L.
303, 84 Atl. 706; See Generally, 64 A. L. R. 1450.

It was the same 93rd General Assembly which met
in special session following the regular session. The
statute provided for the carry-over of all unfinished
business from the regular session (Burns' §34-203).
The Governor's proclamation calling the special session
referred to it as the 93rd General Assembly.

The United States Supreme Court also held that the
bill must be returned to the same "house" in which it
originated, just as the Indiana Constitution so provides,
namely:  " . . . he shall return it, with his objections
to the house in which it shall have originated. . . . "

The appellant contends that Art. 5, §14 of the In-
diana Constitution means that a general adjournment
prevents, *in all cases,* the return of a bill to the house
from which it originated, and the convening of a special
session immediately following a general session of the
General Assembly (such as occurred in this case before
the three day period had expired) nevertheless extends
the period to five days within which the Governor, if
he desires to exercise a veto, is required to return the
bill with his objections, to the office of the Secretary
of State, rather than to the General Assembly then
in special session. The Secretary of State is then re-
quired to send the bill to the house of its origin in
the next session of the General Assembly, which would
here be the existing special session. If we accept such an
interpretation, then the drafters of the Constitution
provided a rather circuitous method of doing an act
when the General Assembly is in session at the time,

where it could have been done directly by sending the bill to the house in which it originated, rather than through the office of the Secretary of State.

The appellant would have Art. 5, §14 of the Indiana Constitution interpreted so as to eliminate the word "prevent". That is to say, appellant would have that portion of the section which reads: "unless the general adjournment shall prevent its return" to read simply: "unless there is a general adjournment".[3]

One of the fundamental rules of constitutional construction is that no word shall be assumed to be mere surplusage. It is an essential corrollary that every word must be given a meaning if possible.

In *Chadwick, Treasurer* v. *City of Crawfordsville* (1940), 216 Ind. 399, 24 N. E. 2d 937, 129 A. L. R. 469, we said:

"The authorities agree that the words used in the Constitution must be presumed to have been carefully chosen so that each word would have a meaning. It has been said that each word must be thought of as having been deliberately selected and intentionally placed as though it had been ham-

---

3. The Hawaiian case [*Haw'n Airlines* v. *Pub. Ut. Com. T.H.* (1959), 43 Haw. 216] turns upon this very point. The first paragraph of Section 51 of the organic act plainly says that a bill must be signed or vetoed by the Governor within ten days after it is delivered to him "unless the legislature adjourns sine die prior to the expiration of such ten days." For that reason a second paragraph using somewhat similar language to that in the Indiana Constitution was interpreted in the light of the above statement. The phraseology therefore of the entire section was not similar to that in the Indiana Constitution. The second reason why that case does not support the appellants here is that the Hawaiian court concluded that upon a sine die adjournment, unfinished business of the regular section was not transferred to the calendar of the succeeding special session. In Indiana the contrary exists. It was the same 93rd General Assembly that met in special session. This is also supported by specific legislation to that effect. Burns' §34-203. (1949 Repl.).

mered into the instrument. Each word therefore must be given effect. . . . ”

We may assume that the drafters of the Constitution of 1851 meant what they said. If they had intended to mean that in all cases a general adjournment of the General Assembly shall extend the time to five days within which the Governor may consider a bill and determine to veto it, it would have accordingly drafted the section to say exactly that. The drafters, however, qualified the general adjournment with the use of the word "prevent", thereby raising the implication that not all "general adjournments" would automatically extend the period from 3 to 5 days within which the Governor could consider a bill submitted to him, but rather assuming thereby that there would or could be situations where a general adjournment occurs, and yet the Governor is not prevented from returning the bill within the three day period. We have such a situation before us now in which the special session immediately following the general adjournment did not prevent the return of the bill within the three day period fixed.

·The word "prevent" in the constitutional section considered must be given meaning, and be given a reasonable meaning. The Governor was not prevented from returning the bill to the house of its origin by the general adjournment of the General Assembly, since it was in special session at the end of the three day period and the bill could have been returned "to the house in which it shall have originated."

The veto power is a restriction upon the legislative branch of the government and is in derogation of the general plan of government for the separation of powers.

This power, therefore, must be strictly construed. 82

C. J. S., Statutes, §52; *Wood* v. *State Administrative Board* (1931), 255 Mich. 220, 238 N. W. 16.

> Senate Enrolled bill 339 was not vetoed by the Governor in accordance with the constitution ■ of this state; hence it became a law without his signature.

Judgment affirmed.

The interpretation of this section of the Constitution being a matter of public importance affecting other legislation, the clerk of this court is directed to certify to the court below immediately this opinion.

Landis, C. J., concurs. Achor, J., concurs with opinion. Myers, J., dissents with opinion. Jackson, J., concurs in dissenting opinion.

## CONCURRING OPINION

ACHOR, J.—There are several aspects of this case which, in my opinion, should receive further consideration.

Numerous cases have been cited from other courts as providing controlling precedent for the case before us. However, it is to be noted that the pertinent provisions in the Indiana Constitution and in the Constitution of the United States [and in most jurisdictions which follow the U. S. Constitution] are clearly distinguishable, and, therefore, the cases decided under the latter constitutional provision are not controlling of the case now before us.

The respective constitutional provisions are set out in the majority opinion and are, therefore, not here repeated.

The Constitution of Hawaii follows very closely the provision of the United States Constitution. The distinguishing feature was noted in the case of *Haw'n*

*Airlines* v. *Pub. Ut. Com., T. H.* (1959), 43 Hawaii 216, at p. 219, in the following statement:

> " . . . *Nowhere in the Organic Act is there an indication that the right of the legislature to consider the governor's objections, once lost by a sine die adjournment of the regular session, may be revived by the convening of a special session.*" [My italics.]

Thus, under the United States Constitution, and other constitutions similar thereto, it necessarily follows that the general [sine die] adjournment operated to effect an end of the whole matter. Stated otherwise, since the Organic Law of such jurisdictions contain no provision that, after a general adjournment, any bill vetoed by the Chief Executive may be presented to another session of the Legislature, it necessarily follows that such a general adjournment of one session of the Legislature operates as a matter of law to "prevent" and render "impossible" the transmitting of any bills by the Chief Executive to another session of the Legislature. It is for this reason that the United States Supreme Court properly held in the case of *Okanogan, etc., Indian Tribes* v. *United States* (1929), 279 U. S. 655, 681, 49 S. Ct. 463, 467, 73 L. Ed. 894, 898, that:

> " . . . [S]ince the President may return a bill at any time within the allotted period, he is prevented from returning it, within the meaning of the constitutional provision, if by reason of the adjournment it is impossible for him to return it to the House in which it originated on the last day of that period."

However, the Indiana Constitution contains express and explicit provision that [except as to bills sent to the Governor during the last two days of the session] all bills passed by the Legislature and presented to the

Governor but not signed by him *must be* returned to the Legislature for reconsideration. Because the Indiana Constitution is unique in this respect, the cases cited and relied upon by the appellant from other jurisdictions are of little or no assistance in deciding the question before us.

We therefore proceed to give consideration to the construction of the constitutional provision without the benefit of judicial reasoning or precedent, since the unique provision of our constitution has not previously been considered by this court. In doing so, we are urged first to give consideration to the contention that the Legislature, by its own action, has demonstrated an intention to construe the constitutional provision, so as to provide that the Governor is not required to return a bill vetoed by him to a subsequent session of the Legislature, in event such session is in progress on the third day following the delivery of the bill to him, but that he may wait until the fifth day and transmit such bill to the Secretary of State, which was the practice followed in this instance.

In considering appellant's contention, there are two further facts which bear upon the matter. First, no instance has been cited prior to the instant case, where a special session of the Legislature immediately succeeded a prior session after a general adjournment and bills passed by the prior session not signed by the Governor could have been, but were not, transmitted by the Governor to such special session of the Legislature. Secondly, although the conduct of the Legislature may be indicative of the legislative intention, regarding the acts of the Legislature, itself, such conduct is not controlling as to the construction which must be placed upon the Organic Law itself. Upon this subject, this court in the case of *Tucker et al.* v. *State of In-*

*diana* (1941), 218 Ind. 614, 676, 35 N. E. 2d 270, stated:

> " . . . But the Legislature did not enact the Constitution, and a legislative intention as to how the Constitution is to operate is of little value in determining the intention of the drafters of the Constitution, especially where the legislative interpretation involves the usurpation of powers which the Constitution vests in the other departments of government. . . . "

In construing the provision of our constitution, we must look to the express language of the provision, itself; and, if there is any ambiguity as to what is a proper construction of the provision, we must then consider the provision as it is related to other provisions within the constitution, and the intention of the framers of the constitution, as indicated by the history of the development of the particular provision.

The pertinent part of the constitutional provision, which we must here consider, is as follows:

> "Every bill which shall have passed the General Assembly, shall be presented to the Governor; if he approve, he shall sign it; but if not, he shall return it, with his objections, to the House in which it shall have originated; . . . if approved by a majority of all members elected to that House, it shall be a law. If any bill shall not be returned by the Governor within three days, Sundays excepted, after it shall have been presented to him it shall be a law, without his signature, unless the general adjournment shall prevent its return; in which case it shall be a law unless the Governor, within five days next after such adjournment, shall file such bill, with his objections thereto, in the office of Secretary of State; who shall lay the same before the General Assembly at its next session, in like manner as if it had been returned by the Governor. But no bill shall be presented to the Governor, within two days next previous to the final adjourn-

ment of the General Assembly." Art. 5, §14, Indiana Constitution.

It is to be noted that the second sentence of the above quoted provision prescribes the procedure which must be followed, with respect to a bill, in event it is vetoed by the Governor and not returned to the Legislature before adjournment. It is this sentence which we must construe. It is in three separate clauses. The first clause provides that "If any bill shall not be returned by the Governor within three days, Sundays excepted, after it shall have been presented to him it shall be a law, without his signature, unless the general adjournment shall prevent its return." In this case, by reason of the special session of the Legislature having been called upon the third day after the bill had been presented to the Governor, under the clear, cold and unqualified language of the provision the general adjournment of the 93rd session of the Legislature did not prevent the Governor from returning the bill to the Senate [the House in which it originated] on that date.

However, it is asserted that the second and third clauses of the provision demonstrates a constitutional intention to restrict the procedure by which a bill is transmitted to a subsequent session of the Legislature to the procedure therein contained. As above stated, this provision states, "unless the Governor, within five days next after such adjournment, shall file *such bill*, with his objections thereto, in the office of Secretary of State; who shall lay the same before the General Assembly at its next session, *in like manner as if it had been returned by the Governor.*" [My emphasis.] It occurs to me that these two clauses do not necessarily demonstrate the constitutional intention asserted by the appellants. For example, what is the meaning

of the term "such bill," as used in the above provision?
Reasonably, it would mean the bill, as described and
qualified in the previous clause of the same sentence.
Thus, it could only reasonably mean a bill which *could
not* be returned to the House of its origin, with the ob-
jections of the governor thereto, within three days of
its receipt by him. As explained above, the bill with
which we are here concerned was not such a bill, since
the bill could have been returned to the House of its
origin within the prescribed three day period. Further-
more, the last clause of the sentence provides that
[the Secretary of State] "who shall lay the same be-
fore the General Assembly at its next session, in like
manner as if it had been returned by the Governor."
The phrase "in like manner as if it had been returned
by the Governor," carries a clear implication that, un-
der other provisions within the procedure prescribed in
the same sentence, it is intended that the Governor may
lay bills before the General Assembly at its next ses-
sion. Otherwise, this aspect of the directive to the Sec-
retary of State has little or no meaning within the
sentence in which it is cast. Thus, the second and third
clauses of the sentence support the clear and unequated
provision contained in the first clause thereof, which
provides that unless a general adjournment of the Leg-
islature shall prevent the return of a bill by the Gov-
ernor to the House in which it originated upon the third
day after it is presented to him, it shall be a law with-
out his signature.

However, assuming *arguendo* that there is ambiguity
as to the construction of the above provision, we must
consider this ambiguity liberally in favor of the Legis-
lature and strictly against the Executive. In this case,
the rule of construction is grounded upon two facts.

First, we are dealing with a legislative enactment under a constitution which provides:

"The Legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives. . . . " Art. 4, §1, Indiana Constitution.

Since the Indiana Constitution provision granting veto power of the Governor has been transferred from the Legislative branch of the government to the Executive branch of our government, it is merely a limitation on the power fundamentally vested in the Legislature. Such limitation should therefore be exercised only as it is expressed in clear and unambiguous terms within the constitutional provision, itself.

Furthermore, if we are to construe the constitutional provision, it is proper that we give consideration to the history of the particular constitutional provision. Without resorting to a belaboring discussion of the issue, it is to be noted that there is a clear and progressive intention to restrict the veto power of the Chief Executive. Briefly, this intention is demonstrated by the changes in the provision, as it originally appeared in the United States Constitution, and has subsequently been modified by the Constitutional Conventions of Kentucky, the Indiana Constitutional Convention of 1816, and, finally, to its present form and status, as stated by the Indiana Constitutional Convention of 1851.

It is significant that the veto power of the President was, by the Constitution of the United States, cast within the *Legislative* branch of the government itself. It was provided that the President have *ten days* in which to exercise his power of veto, which veto could only be overwritten by *two-thirds* of the majority of both Houses of Congress. He could pocket veto any bill pre-

sented to him within ten days of the general adjournment of the Congress and, in event of his veto of a bill, he had no obligation whatsoever to refer the bill to any subsequent session of the Congress.

The President's broad powers of veto, which, by the Constitution, were cast within the Legislative branch of the government itself, are in marked contrast with the greatly restricted veto power of the Governor under our present constitution. First, it is to be noted that the veto power of the Governor is removed from the Legislative branch of government and cast with the executive branch. The Governor is required to return a bill which he does not sign within three days instead of ten. To override his veto, it is necessary that the bill pass each House of the Legislature by a mere majority, and, furthermore, any bill which is presented to the Governor [except within the last two days of the session] must be returned to the next session of the Legislature for its action, notwithstanding the general adjournment thereof.

## DISSENTING OPINION

MYERS, J.—I disagree with the majority opinion for the reason that it has completely misinterpreted the plain meaning of the Indiana Constitution and fallen into a murky morass of semantics which has utterly twisted the true interpretation of certain sections thereof. It is agreed that Section 14 of Article 5 is the principal and most important part of the Indiana Constitution to be interpreted herein. We need not repeat it as it has been set forth in full in the majority opinion. It proceeds to spell out exactly what happens when the Governor receives a bill passed by the General Assembly. During the session he may do one of three things:  he may sign it, in which case it becomes a

law according to its terms; he may not sign it, in which case, after the passage of three days, Sundays excepted, it becomes the law without his signature; or he may return it, with objections, within three days after receiving it, to the House in which it originated for new action to be taken thereon. There is a special provision wherein, if the General Assembly adjourns before he can exercise his right to return it with objections during the three-day period and thereby prevents such return, it gives him five days after adjournment to file the bill with the Secretary of State, together with his objections thereto, who must present it to the next session "as if it had been returned by the Governor." If no action is taken by the Governor during the passage of these five days, the bill automatically becomes law.

Here the bill was presented to the Governor on the 59th day of the General Assembly's regular session. It went into general adjournment two days later. The Governor did not have the full three days within which to return it to the House from whence it came with his objections. He thereupon presented it with his objections on the fourth day (after the adjournment) to the Secretary of State. It is claimed that, since on the third day after he received the bill he had called a special session, he could have returned the bill with his objections to the Senate on the third day since the Senate was in session at that time. The trial court upheld this viewpoint and entered judgment overruling a demurrer to the complaint which has the effect of declaring the Special Prosecutors' Bill to be law. The majority of this court has listened to and upheld the very enticing but erroneous arguments presented in masterful fashion by appellees.

The fact is overlooked that the Constitution of Indiana clearly separates a regular session of the General Assembly from a special session. The two cannot be merged although they both may be termed, as here, the 93rd General Assembly. Section 9 of Article 4 of the Indiana Constitution states that the "sessions" of the General Assembly shall be held biennially, or if, in the opinion of the Governor, the public welfare shall require it, he may, by proclamation, call a "special session." Section 29, Article 4, declares that no "session" of the General Assembly (except the first one, under the 1851 Constitution) shall extend beyond the term of sixty-one days, and no "special session" beyond the term of forty days. This means that our regular biennial session of the General Assembly is strictly limited in point of time. When that time is up, it is finished and can never be reconvened as a "session." Section 14 of Article 5 refers to "general adjournment" and "final adjournment" of the General Assembly. Such terms usually mean adjournment *sine die*. Black's Law Dictionary, Fourth Edition, page 63. After such adjournment, that session has passed away forever. Of course, the Governor may call a special session within minutes of the general adjournment of the regular session, but it is a new, unusual and extraordinary session. See Black's Law Dictionary, Fourth Edition, page 1569, for interpretation of "session."

As Section 14, Article 5, says, if a bill shall not be returned by the Governor within three days, Sundays excepted, it shall become a law "unless the general adjournment shall prevent its return," et cetera.

Appellees point out in their brief that this phrase is very similar to one used in the United States Constitution, which is as follows:

"If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, *unless the congress, by their adjournment, prevent its return,* in which case, it shall not be a law." (Our emphasis.) Section 7 [2], Article 1, United States Constitution.

Appellees, as well as this court, cite the case of *Okanogan, etc., Indian Tribes* v. *United States* (1929), 279 U. S. 655, 681, 49 S. Ct. 463, 467, 73 L. Ed. 894, 898, in which the court stated:

" . . . since the President may return a bill at any time within the allotted period, he is prevented from returning it, within the meaning of the constitutional provision, if by reason of the adjournment it is impossible for him to return it to the House in which it originated on the last day of that period."

Appellees urgently urge that this court make a similar interpretation concerning the underscored phrase as to make the word "prevent" mean that it is "impossible."

The General Assembly entitles its actions as "Laws of the State of Indiana Passed at the Special Session of the 93rd General Assembly Begun on the Twelfth Day of March A.D. 1963." In Chapter 25, Section 3, Page 51, Acts 1963 (Spec. Sess.), the act also refers to the expiration of any "regular session." Chapter 27 of such Acts provides for expenses of such members, referring to them as members of the "Special Session of the Ninety-third General Assembly."

The plain interpretation of the word "prevent" follows exactly what appellees urge, that it is *impossible* to return a bill to the regular session of the General Assembly if a final adjournment has taken place. It can

only be done by means of the Secretary of State at a new and future session. The Governor's procedure in this case was correct. It made no difference that some of the five days granted to him after adjournment overlapped some of the days of the new special session. We think the case of *Haw'n Airlines* v. *Pub. Ut. Com., T. H.* (1959), 43 Haw. 216, 219, 220, 221, is authority for this. In that case, under a somewhat similar state of facts as the one at bar, the court said as follows:

" 'It follows from what has been said that only an adjournment *sine die* can prevent the return of a bill, and this is the only kind of adjournment referred to in section 34 of the Organic Act.'
. . .

"But a special session is not a continuation of the regular session. It is a new session, like a Congressional session convened by the President on extraordinary occasion, of which it is stated in Jefferson's Manual, section LI, as follows: 'The Constitution authorizes the President "on extraordinary occasions, to convene both Houses, or either of them." Constitution, 1, 3. If convened by the President's proclamation, this must begin a new session, and of course determine the preceding one to have been a session.' "

The clear meaning of the word "prevent" in this section of the Constitution is to "prohibit" or "forbid by law." After the general adjournment it was "impossible," to use appellees' expression, for him to have returned the bill to the Senate because the Senate of the regular session of the 93rd General Assembly had ceased to exist, even though there was a Senate in existence under the new special session. The record does show that the Secretary of State did return the bill to the special session as required by law.

The judgment of the trial court herein should be re-

versed and the cause remanded, with directions to sustain the demurrer of appellant to the complaint.

Jackson, J., concurs in dissent.

NOTE.—Reported in 196 N. E. 2d 66.